No. 22-10235

_____

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

JUST PLAY, LLC,

*Plaintiff-Appellee,*

v.

FITZMARK, INC.,

*Defendant-Appellant.*

_____

On Appeal from the United States District Court
For the Southern District of Florida (Hon. Aileen M. Cannon)
No. 9:20-cv-80663-AMC

_____

## APPELLANT'S OPENING BRIEF

## LIST OF COUNSEL CONTINUED ON NEXT PAGE

Andrew J. Butcher
abutcher@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON
& FEARY, P.C.
30 W. Monroe St., Ste. 1600
Chicago, IL 60603
(312) 255-7200

Adam C. Smedstad
asmedstad@scopelitis.com
E. Ashley Paynter
apaynter@scopelitis.com
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY, P.C.
3214 W McGraw St., Ste. 300
Seattle, WA 98199
(206) 288-6192

Janis E. Steck
jsteck@scopelitis.com
James A. Eckhart
jeckhart@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON
& FEARY, P.C.
10 W. Market St., Ste. 1400
Indianapolis, IN 46204
(317) 687-1777

---

*Attorneys for Defendant-Appellant,*
*FITZMARK, INC.*

Case No. 22-10235
Just Play, LLC v. FitzMark, Inc.

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant, FitzMark, Inc., files this Certificate of Interested Persons and Corporate Disclosure Statement listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1. As a result of a corporate conversion effective December 16, 2020 FitzMark, Inc., converted to FitzMark, LLC. FitzMark, Inc. did not have a parent company, no publicly held corporation owned ten (10%) percent or more of FitzMark, Inc's stock. FitzMark, LLC does not have a parent corporation and no publicly held corporation owns ten (10%) percent or more of FitzMark, LLC's stock. No publicly traded company has an interest in the outcome of this case or appeal.

Persons and entities that undersigned counsel believes, in good faith, have an interest in the outcome of this appeal are:

1.      Blanco, Pedro Albert-Counsel for FitzMark, Inc.

2.      Bilzin, Sumberg, Baena, Price & Axelrod, LLP-Law Firm representing Plaintiff-Appellee, Just Play, LLC

3.      Brannon, David Lee-United States District Court Magistrate Judge

4.      Butcher, Andrew J.-Counsel for FitzMark, Inc.

5.      Cannon, Aileen M. Cannon-United States District Judge

6.      Eckhart, James A.-Counsel for FitzMark, Inc.

Case No. 22-10235
Just Play, LLC v. FitzMark, Inc.

    7.      Emby, Charles-Appellee Just Play, LLC

    8.      FitzMark, Inc.-Appellant

    9.      FitzMark, LLC

    10.    Fitzgerald, Scott-Appellant FitzMark, LLC

    11.    Geller, Lawrence-Appellee Just Play, LLC

    12.    Goldsmith, Jerry Robert-former Counsel for Just Play, LLC

    13.    Greenberg, Geoffrey-Appellee Just Play, LLC

    14.    Just Play, LLC-Appellee

    15.    Lustrin, Lori P.-Counsel for Just Play, LLC.

    16.    Matthewman, William-United States District Court Magistrate Judge

    17.    Paynter, E. Ashley-Counsel for FitzMark, Inc.

    18.    Phillips, Kevin M.-former Counsel for FitzMark, Inc.

    19.    Reinhart, Bruce E.-United States District Court Magistrate Judge

    20.    Sakona, Shalia Marie-Counsel for Just Play, LLC

    21.    Scopelitis, Garvin, Light, Hanson & Feary, P.C.-Law Firm representing

Defendant-Appellants FitzMark, Inc.

    22.    Smedstad, Adam C.-Counsel for FitzMark, Inc.

    23.    Smith, Rodney-United States District Court Judge

    24.    Steck, Janis E.-Counsel for FitzMark, Inc.

Case No. 22-10235

Just Play, LLC v. FitzMark, Inc.

25.  Vasquez-Pallett, Melissa Cade-Counsel for Just Play, LLC

*/s/ Andrew J. Butcher*
Andrew J. Butcher

Attorneys for Defendant-Appellant,
FITZMARK, INC.

**STATEMENT REGARDING ORAL ARGUMENT**

FitzMark respectfully requests oral argument. This appeal presents issues striking at foundational principles of contract formation and promissory estoppel under Florida law. Additionally, oral argument may be helpful to the Court given the extensive factual record developed at trial.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...............................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS ................................................................. ii

TABLE OF CITATIONS ................................................................. v

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF THE ISSUES ......................................................... 1

INTRODUCTION .......................................................................... 2

STATEMENT OF THE CASE ............................................................. 5

I.    Nature of Case .................................................................... 5

II.   Factual Background ............................................................. 7

      A.    FitzMark is a warehouse that employs standard warehouse
            agreements which customers accept by tendering goods ..................... 7

      B.    Just Play approaches FitzMark to provide warehousing
            services. ..................................................................... 8

      C.    Just Play selects FitzMark as its new provider and never
            communicates any rejection of the May 2 Rate Quotation and
            Contract or the provision for acceptance through tendering
            goods .......................................................................... 12

      D.    Just Play tenders goods to FitzMark on October 18, 2018. ................ 12

      E.    Just Play claims to maintain an uncommunicated policy of not
            signing warehouse agreements. ............................................. 15

III.  Procedural History .............................................................. 16

      A.    The Pleadings .............................................................. 16

      B.    Discovery .................................................................... 17

C.    Trial ..................................................................................18

     1.    Just Play focuses on alleged oral contract. ...............................18

     2.    Just Play argues Gurrola's testimony regarding a legal contention is binding. ................................................................19

     3.    FitzMark moves for judgment as a matter of law.....................21

     4.    The court rejects FitzMark's proposed jury instructions and verdict form on promissory estoppel. ...............................22

     5.    The jury renders a verdict for Just Play on promissory estoppel. .................................................................................24

D.    Renewed Motion for Judgment as a Matter of Law and Appeal ........25

IV.    Standards of Review ......................................................................27

SUMMARY OF THE ARGUMENT ......................................................27

ARGUMENT ........................................................................................29

I.    The District Court Should Have Granted FitzMark's Renewed Rule 50 Motion..............................................................................................29

A.    The trial evidence conclusively established the parties agreed to be bound by the May 2 Rate Quotation and Contract........................30

     1.    Just Play accepted the May 2 Rate Quotation and Contract when it tendered goods to FitzMark. .........................................32

     2.    There is no evidence that Just Play rejected the May 2 Rate Quotation and Contract. ...........................................................33

          a.    Gurrola's testimony does not support the verdict. .........34

          b.    FitzMark's offer to extend the rate lock and the parties' rate negotiations do not support the verdict. ........................................................................36

          c.    Carter's testimony that he told FitzMark "several times" that Just Play would not sign does not support the verdict. ........................................................37

       d.     Just Play's uncommunicated corporate policy against entering warehouse agreements does not support the verdict. .........................................................38

B.    Alternatively, there was insufficient evidence to support the promissory estoppel claim....................................................................40

     1.     The Jury's verdict for Just Play on its promissory estoppel claim is unsupported by the evidence presented at trial. ..........40

     2.     FitzMark preserved its challenge. .............................................40

II.   The District Court Adopted Erroneous Jury Instructions and Jury Verdict. ........................................................................................................42

A.    The court should have instructed the jury that Just Play had to prove by clear and convincing evidence that FitzMark made specific promises to Just Play on which Just Play relied. ..................42

B.    The verdict form should have asked the jury whether Just Play proved by clear and convincing evidence that FitzMark made specific promises. ..................................................................................48

CONCLUSION ......................................................................................................48

CERTIFICATE OF COMPLIANCE......................................................................50

# TABLE OF CITATIONS

## Cases

*All Fla. Sur. Co. v. Coker*,
    88 So. 2d 508 (Fla. 1956) .................................................................... 32

*Baron v. Osman*,
    39 So. 3d 449 (Fla. Dist. Ct. App. 2010) ............................................ 30

*Bartley v. Kim's Enter. of Orlando, Inc.*,
    568 F. App'x. 827 (11th Cir. 2014) ..................................................... 41

*Bearint ex rel. Bearint v. Dorell Juv. Grp.*,
    389 F.3d 1339 (11th Cir. 2004) ........................................................... 43

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*,
    765 F.3d 1277 (11th Cir. 2014) .................................................... 27, 42

*Bowen v. Taylor-Christensen*,
    98 So. 3d 136 (Fla. Dist. Ct. App. 2012) ............................................ 35

*Camina Serv. Inc. v. Shell Oil Co.*,
    816 F. Supp. 1533 (S.D. Fla. 1992) ............................................. 43, 46

*Christopher v. Cutter Labs.*,
    53 F.3d 1184 (11th Cir. 1995) ..................................................... 45, 46

*Cooper v. Federated Nat'l Ins. Co.*,
    285 So. 3d 1036 (Fla. Dist. Ct. App. 2019) ........................................ 48

*CT Miami, LLC v. Samsung Elecs. Latinoamerica Miami, Inc.*,
    201 So. 3d 85 (Fla. Dist. Ct. App. 2015) ............................................ 35

*Dye v. Tamko Bldg. Prods., Inc.*,
    908 F.3d 675 (11th Cir. 2018) ............................................................ 31

*Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*,
    262 F. Supp. 2d 1334 (S.D. Fla. 1999) ....................................... 43, 46

*Equal Emp't Opportunity Comm'n v. Exel, Inc.*,
    884 F.3d 1326 (11th Cir. 2018) .................................................... 27, 29

*Ermini v. Scott*,
　937 F.3d 1329 (11th Cir. 2019) ............................................................43

*Fujifilm N. Am. Corp. v. D/C Exp. & Domestic Packing, Inc.*,
　339 F. Supp. 3d 790 (N.D. Ill. 2018) ....................................................31

*Gateway Cable T. V., Inc. v. Vikoa Const. Corp.*,
　253 So. 2d 461 (Fla. Dist. Ct. App. 1971) ............................................31

*Gendzier v. Bielecki*,
　97 So. 2d 604 (Fla. 1957)......................................................................39

*Gillespie v. Bodkin*,
　902 So. 2d 849 (Fla. Dist. Ct. App. 2005) .....................................32, 33

*Goldsmith v. Bagby Elevator Co., Inc.*,
　513 F.3d 1261 (11th Cir. 2008) ............................................................30

*Great Lakes Reinsurance (UK) PC v. Roca*,
　No. 07-23322-CIV, 2009 WL 200257 (S.D. Fla. Jan. 23, 2009) ........40

*In re Stand. Jury Instructions—Contract and Bus. Cases*,
　116 So. 3d 284 (Fla. 2013)....................................................................32

*Londono v. City of Gainesville*,
　768 F.2d 1223 (11th Cir. 1985) ............................................................39

*McNely v. Ocala Star-Banner Corp.*,
　99 F.3d 1068 (11th Cir. 1996) .............................................. 27, 29, 48

*Med-Star Cent., Inc. v. Psychiatric Hosps. of Hernando Cnty., Inc.*,
　639 So. 2d 636 (Fla. Dist. Ct. App. 1994) ............................................32

*Menorah Ins. Co., Ltd. v. W.F. Whelan Co., Inc.*,
　110 F. App'x 524 (6th Cir. 2004) .........................................................31

*Miller v. Universal City Studios, Inc.*,
　650 F.2d 1365 (5th Cir. 1981) ..............................................................47

*Mills v. Innovative Energy Glob., Ltd.*,
　No. 3:09-CV-294-MCR-CJK, 2011 WL 1299938 (N.D. Fla. Mar. 31, 2011)....36

*Montgomery v. Aetna Cas. & Sur. Co.*,
   898 F.2d 1537 (11th Cir. 1990) ............................................................35

*Mosher v. Speedstar Div. of AMCA Int'l, Inc.*,
   979 F.2d 823 (11th Cir. 1992) ..............................................................47

*Nowlin v. Nationstar Mortg., LLC*,
   193 So. 3d 1043 (Fla. Dist. Ct. App. 2016) ........................................33

*R.J. Reynolds Tobacco Co. v. Bessent-Dixon*,
   313 So. 3d 173 (Fla. Dist. Ct. App. 2021) ..........................................47

*R.J. Reynolds Tobacco Co. v. Prentice*,
   290 So. 3d 963 (Fla. Dist. Ct. App. 2019) ................................... 46, 47

*Roden v. Bergen Brunswig Corp.*,
   132 Cal. Rptr. 2d 549 (Cal. Ct. App. 2003) ........................................36

*Ruckh v. Salus Rehab., LLC*,
   963 F.3d 1089 (11th Cir. 2020) ............................................................41

*Smart v. City of Miami*,
   740 F. App'x 952 (11th Cir. 2018) ......................................................29

*Tome v. State Farm Fire and Cas. Co.*,
   125 So. 3d 864 (Fla. Dist. Ct. App. 2013) ....................... 43, 44, 45, 46

*Tran v. Toyota Motor Corp.*,
   420 F.3d 1310 (11th Cir. 2005) ............................................................47

*Underwriters Ins. Co. v. Freytes & Sons Corp., Inc.*,
   565 So. 2d 900 (Fla. Dist. Ct. App. 1990) ..................................... 43, 46

*W.A. Taylor & Co. v. Griswold & Bateman Warehouse Co.*,
   719 F. Supp. 697 (N.D. Ill. 1989) ........................................................31

*W.R. Grace & Co. v. Geodata Serv. Inc.*,
   547 So.2d 919 (Fla. 1989) ........................................................ 40, 43, 46

## Statutes

28 U.S.C. § 1291 .....................................................................................1

28 U.S.C. § 1332 .....................................................................................1

vii

28 U.S.C. § 1441 ................................................................................1

F.S.A. § 677.202 ...............................................................................8

F.S.A. §§ 677.209, 677.210 ............................................................15

## Rules

11th Cir. R. 28-5 ..............................................................................6

Fed. R. App. P. 28.1(e) ...................................................................50

Fed. R. App. P. 32(a)(5)...................................................................50

Fed. R. App. P. 4(a)(4)(A) ...............................................................1

Fed. R. Civ. P. 50 ............................................... 1, 21, 30, 34, 40, 41, 42

Federal Rule of Civil Procedure 50(a)(2) ......................................29

Federal Rule of Civil Procedure 50(b).......................................7, 29

Rule 50(a) and Rule 50(b).................................................................41

## Other Authorities

13 Williston on Contracts § 39:18 (4th ed. 2022) .........................37

15 West's Legal Forms, *Commercial Transactions* § 83:17 (5th ed. 2021) .........7, 8

17 Corpus Juris Secundum Contracts § 50 ....................................39

Cal. Code Forms § 7104 ....................................................................8

Fla. UCC Forms F.S.A. § 677.202, Form 3 .....................................8

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this case under 28 U.S.C. § 1332(a)(1) following removal to federal court pursuant to 28 U.S.C. § 1441. ECF No. 1. The district court had diversity jurisdiction because the parties were completely diverse and the amount in controversy exceeded $75,000, exclusive of interest and costs. *Id.* Specifically, at the time of removal, all of Just Play's members were individuals who were citizens of Florida and FitzMark was an Indiana corporation with its principal place of business located in Indianapolis, Indiana, and was therefore and Indiana citizen. *Id.*

This Court has jurisdiction under 28 U.S.C. § 1291. This appeal is from a final judgment that disposes of all parties' claims. Based on the jury's September 20, 2021 verdict, the district court entered final judgment on September 23, 2021. ECF No. 210. On October 18, 2021, FitzMark filed its renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50. ECF No. 226. On December 21, 2021, the district court denied FitzMark's renewed motion for judgment as a matter of law. ECF No. 248. On January 19, 2022, FitzMark filed its notice of appeal. ECF No. 249. This appeal is therefore timely. Fed. R. App. P. 4(a)(4)(A).

## STATEMENT OF THE ISSUES

1.     Did the district court err in failing to grant FitzMark's motion for judgment as a matter of law when Just Play tendered goods to FitzMark's California

warehouse and failed to present any evidence that it rejected tendering goods as an alternate method of accepting a May 2 Rate Quotation and Contract that precluded Just Play's claims?

2.      Did the district court abuse its discretion in adopting jury instructions and a jury form that did not reflect the promissory estoppel claim pleaded in Just Play's Complaint and did not conform to Florida law that estoppel claims be based on specific, definite promises?

## INTRODUCTION

This is an appeal from a $3,959,134 jury verdict in favor of Just Play on Just Play's promissory estoppel claim against FitzMark. Just Play is one of the largest toy manufacturers in the world. FitzMark is warehousing company that provided warehousing services to Just Play pursuant to the terms of a written warehouse agreement. The existence of that written agreement precluded Just Play from pursuing its promissory estoppel claim—Florida law will not permit parties to a contract to pursue *quasi*-contractual claims when the subject matter of the parties' dispute is governed by an express contract.

At trial, Just Play did not dispute the import that having a written contract would have on its ability to pursue a claim for promissory estoppel. Rather, Just Play asserted that it could pursue its promissory estoppel claim because it never *signed* its contract with FitzMark. The contract between the parties did not need to be signed

to become effective. The form warehouse agreement contained a provision that allowed Just Play to accept its terms by tendering goods to FitzMark more than 30 days after receiving the contract. Florida law not only recognizes the validity of accepting warehouse agreement terms by tendering goods, the Florida code publishes form warehouse agreements that mirror the acceptance through tender terms contained in the parties' warehouse contract.

FitzMark sent Just Play the warehouse agreement on May 2, 2018 (referred to as the "May 2 Rate Quotation and Contract"). Just Play accepted the terms of that contract when it tendered goods to FitzMark on October 18, 2018. Recognizing that Florida would enforce the terms of the parties' warehouse agreement, Just Play asserted it had rejected the warehouse agreement "in its entirety" before tendering goods on October 18, 2018. FitzMark moved for judgment as a matter of law at the close of Just Play's case-in-chief, because Just Play adduced no evidence that it *ever* rejected the terms of the parties' warehouse agreement. The district court improperly denied FitzMark's motion. At the close of trial, FitzMark renewed its motion for judgment as a matter of law. The district court denied FitzMark's renewed motion despite the absence of any evidence that Just Play rejected the parties' May 2 Rate Quotation and Contract.

This Court need only apply uncontroversial black letter law on contract formation to reverse the district court's denial of FitzMark's motion for judgment as

a matter of law. Reversing the district court's denial of FitzMark's motion for judgment as a matter of law leaves bedrock rules of contract formation in Florida undisturbed. Where a contract provides for multiple methods of acceptance and a party signifies its acceptance through one of those methods, the parties will be deemed to have formed a contract. Allowing the district court's ruling to stand on the other hand, will upend Florida law on contract formation.

Likewise, the Court should reverse the district court's rulings on the jury instructions and jury verdict form related to Just Play's promissory estoppel claim. To succeed on its claim for promissory estoppel, Florida law required Just Play to prove by clear and convincing evidence it relied to its detriment on definite and substantial promises made by FitzMark. Consistent with the high bar for promissory estoppel claims under Florida law, Just Play's Complaint identified specific promises it alleged FitzMark made to Just Play and on which Just Play relied. FitzMark proffered jury instructions and a jury verdict form consistent with Florida law and Just Play's own pleading. Specifically, FitzMark's proposals mirrored Florida's pattern jury instructions for promissory estoppel claims and included the specific promises Just Play alleged FitzMark made. Even so, the district court rejected FitzMark's proposals and instead instructed the jury that it need only find that FitzMark promised to perform undefined "warehousing services." The Court should reverse the district court because its jury instructions and verdict form

contradicted both the allegations in Just Play's Complaint and black letter Florida law requiring specific, definite promises for promissory estoppel claims.

## STATEMENT OF THE CASE

### I.    Nature of Case

This is an appeal following a jury verdict involving a dispute between a FitzMark, a warehouse provider, and Just Play, one of the world's largest toy manufacturers. ECF No. 249. Just Play hired FitzMark to warehouse Just Play's goods and claimed that it suffered damages due to FitzMark's management of its products. ECF No. 1 at 9–26. At trial, FitzMark contended that Just Play agreed to be bound by a May 2, 2018 written agreement. Specifically, FitzMark sent Just Play a Rate Quotation and Contract on May 2, 2018 (May 2 Rate Quotation and Contract), which invited Just Play to accept by signing or by tendering goods to FitzMark.[1] Although Just Play never signed the May 2 Rate Quotation and Contract, on October 18, 2018, it tendered goods to FitzMark. ECF No. 222-1 at 80.[2] At trial, FitzMark contended Just Play accepted the May 2 Rate Quotation and Contract when it tendered goods on October 18, 2018.

---

[1] A list of all exhibits admitted at trial, as well as the exhibits themselves, are available at ECF Nos. 214 through 218. The May 2 Rate Quotation and Contract was entered into evidence at trial as Plaintiff's Exhibit 19 (ECF No. 214-19 at 4–11), Plaintiff's Exhibit 20 (ECF No. 214-20 at 4–11, 15–22), and Defendant's Exhibit 45 (ECF No. 217-45 at 4–11).

[2] Several witnesses at trial testified via video deposition. The transcripts of all of this testimony are available at ECF No. 222.

Just Play concedes that it knew that the May 2 Rate Quotation and Contract provided for acceptance by Just Play's tender of goods and that Florida law recognizes tender of goods as a valid form of acceptance for warehouse agreements. ECF No. 234 at 12. Just Play acknowledged that it tendered goods after FitzMark sent the May 2 Rate Quotation and Contract. ECF No. 222-1 at 80; ECF No. 234 at 10. Just Play also concedes that the terms in the May 2 Rate Quotation and Contract extinguish Just Play's claims for consequential damages. Day 2 Trial Tr. at 101-102.[3] Just Play's sole basis for avoiding the import of FitzMark's acceptance of its tender of goods, was its assertion that Just Play "*rejected* the May [2 Rate Quotation and Contract], in its entirety, which includes the terms of acceptance." ECF No. 234 at 12 (emphasis in original). Just Play asserted that *after* it rejected the May 2 Rate Quotation and Contract "in its entirety," it formed an oral contract with FitzMark and that the oral contract did not limit FitzMark's liability for consequential damages. Day 4 Trial Tr. at 187–88.

To establish its "oral contract" theory, Just Play called witnesses who testified that Just Play had an internal corporate policy against entering into written contracts with warehouse providers and would only enter into oral agreements with warehouse providers. None of these witnesses testified that they ever communicated this policy

---

[3] The trial transcript is not yet available on the district court docket. Per 11th Cir. R. 28-5, this brief cites to the trial transcript as "Day __ Trial Tr. at __," so that "Day 2 Trial Tr. at 102" refers to page 102 of the transcript for the second day of trial.

to anyone at FitzMark. Even Just Play's President testified that he could not remember whether Just Play entered into a written contract with FitzMark. ECF No. 222-6 at 1–2.

In reaching its verdict, the jury answered a special interrogatory finding that Just Play failed to prove that the parties agreed to govern their relationship by the terms of an oral warehouse contract. ECF No. 205 at 1. The jury also found that FitzMark failed to establish that Just Play accepted the May 2 Rate Quotation and Contract. *Id.* at 2. The jury awarded Just Play $3,959,134 in damages on a promissory estoppel theory. *Id.* at 3. The district court entered judgment in accordance with the jury's verdict and denied FitzMark's renewed motion under Federal Rule of Civil Procedure 50(b).

## II.    Factual Background

### A.    FitzMark is a warehouse that employs standard warehouse agreements which customers accept by tendering goods.

FitzMark is a warehousing and logistics services provider with warehousing space in Carson, California. ECF No. 222-1 at 55; ECF No. 222-6 at 1. Like many industries, warehouses operate using form agreements that reflect industry standard terms, including how depositors, like Just Play, can indicate their assent to those terms. *See, e.g.*, 15 West's Legal Forms, *Commercial Transactions* § 83:17 (5th ed. 2021) (observing these standard terms were promulgated more than half a century ago); William H. Towle, WAREHOUSING LAW 15 (2d ed. 2001) (ECF No. 110-01).

7

These terms are so pervasive and uncontroversial that several states, including both California (the location of the FitzMark warehouse) and Florida (the location of Just Play's headquarters), publish them as suggested templates for warehousing agreements. *See* Fla. UCC Forms F.S.A. § 677.202, Form 3; Cal. Code Forms § 7104, Form 2; *see also* 15 West's Legal Forms, *Commercial Transactions* § 83:17 (5th ed. 2021) (observing these standard terms were promulgated more than half a century ago).

Florida's model terms for alternative methods of acceptance, mirror the terms in the May 2 Rate Quotation and Contract. *Compare* Fla. UCC Forms F.S.A. § 677.202, Form 3, Sec. 1, *with* May 2 Rate Quotation and Contract, Sec. 1. Both the model terms and the May 2 Rate Quotation and Contract provide that if the Depositor (Just Play) tenders goods to Warehouse (FitzMark) "after 30 days from the proposal date" (April 19, 2018) "without prior written acceptance by Depositor" and Warehouse accepts such goods, "Depositor agrees to the rates and charges as per agreement and invoiced by Warehouse and to all terms & conditions of this Contract." May 2 Rate Quotation and Contract, Sec. 1(b). Just Play acknowledged in the trial court that it was not "ignorant of [these] terms." ECF No. 234 at 12.

## B.    Just Play approaches FitzMark to provide warehousing services.

Just Play manufactures toys that it sells to retailers like Walmart, Target, Amazon, Kohl's, the Dollar Stores, Dollar General, Dollar Tree, Sam's Club, and

BJ's Wholesale. Day 1 Trial Tr. at 195–96. Walmart is Just Play's largest customer. *Id.*

In January 2018, Dove Carter, Just Play's Director of Operations, contacted Tony Gurrola, FitzMark's warehouse manager, regarding Just Play's warehousing needs. ECF No. 222-1 at 15, 17. Mr. Carter and Michael Borchert, another Just Play employee, visited the FitzMark warehouse in Carson, California in January 2018. *Id.* at 17.

Several months after the initial warehouse visit, Mr. Carter requested that Mr. Gurrola submit a proposal for FitzMark's warehouse services to Just Play. ECF No. 222-1 at 18–19. On April 11, 2018, Mr. Gurrola emailed Mr. Carter a proposed rate sheet and warehouse agreement. ECF Nos. 214-8, 217-36. The proposal provided it could be accepted by tendering goods and contained a liability limiter. ECF Nos. 214-8, 217-36. After reviewing the proposal, Mr. Carter expressed concerns about certain rates. ECF No. 214-10; ECF No. 217-38; ECF No. 222-1 at 21. Although Mr. Carter testified he told Mr. Gurrola that Just Play would not sign FitzMark's proposal dated April 11, 2018, ECF No. 222-1 at 20, he did not testify that he ever told Mr. Gurrola that Just Play had a policy against entering into written agreements with warehouse providers. *Id.*

On April 19, 2018, Mr. Gurrola emailed Mr. Carter a revised version of the proposed rate sheet and warehouse agreement. ECF Nos. 214-11, 214-12, 217-42.

The proposal again provided it could be accepted by tendering goods and contained a liability limiter. ECF Nos. 214-11, 214-12, 217-42.

On May 2, 2018, Mr. Gurrola sent Mr. Carter the May 2 Rate Quotation. ECF Nos. 214-19, 214-20, 217-45. Like the previous proposals, the May 2 Rate Quotation and Contract explained that, if accepted, FitzMark would not be responsible for "any loss of profit or special, indirect, or consequential damages of any kind," and (2) limited FitzMark's liability for product loss or damage to $0.25 per pound of the damaged or lost product. May 2 Rate Quotation and Contract at 1 (Operating Parameter 3); *id.*, Sec. 11.

Like the previous proposals, the May 2 Rate Quotation and Contract explained the manner in which Just Play could accept it terms, including by tendering goods:



**Contract Terms and Conditions**

ACCEPTANCE – Sec. 1
(a) This Contract, including accessorial or special service charges that may be attached hereto, must be accepted within 30 days from the proposal date by signature of Depositor. In the absence of written acceptance, the act of tendering goods described herein for storage or other services by Warehouse within 30 days from the proposal date shall constitute acceptance by Depositor. Depositor has had the opportunity to review and inspect the warehouse facility ("Facility").
(b) In the event that goods tendered for storage or other services do not conform to the description(s) product profile movements or product profile characteristics as provided by Depositor or listed or attached or herein, or conforming goods are tendered after 30 days from the proposal date without prior written acceptance by Depositor as provided in paragraph (a) of this section, Warehouse may refuse to accept such goods. If Warehouse accepts such goods, Depositor agrees to rates and charges as per agreement and invoiced by Warehouse and to all terms & conditions of this Contract.

May 2 Rate Quotation and Contract, Sec. 1 (highlighting added).

Under the terms of the May 2 Rate Quotation and Contract, Just Play could accept the contract by signing the document or tendering goods within 30 days of receipt. *Id.* Just Play could also accept the May 2 Rate Quotation and Contract by

tendering goods more than 30 days after receipt, if FitzMark accepted those goods. *Id.*

At trial, Just Play called Michael Borchert, who testified that he told Mr. Carter that he should go speak to Larry Geller, Just Play's in-house counsel, because Just Play had a policy of not entering into written agreements with warehouse providers. Day 2 Trial Tr. at 143. Mr. Carter testified that he spoke to Mr. Geller about the written contract. ECF No. 222-1 at 20. Mr. Carter testified that Mr. Geller and Mr. Borchert told Mr. Carter they had never signed warehouse contracts before and that "they have no intentions of signing any kind of warehouse contract going forward." *Id.* at 41. Mr. Carter never testified that he told FitzMark that Just Play had no intentions of signing any kind of warehouse contract going forward.

On May 3, 2018, Mr. Gurrola emailed Mr. Carter, asking if he could "run with the proposal," that he sent the day before. ECF No. 214-22 at 2; ECF No. 214-23 at 2; ECF No. 218-37 at 2. On May 15, 2018, Mr. Gurrola checked again to see if there was "any movement on the decision-making process." *Id.* Mr. Carter responded on May 15, 2018, that Just Play was not prepared to move forward with FitzMark yet, but that FitzMark would be Mr. Carter's recommended warehouse provider. ECF No. 214-22 at 1; ECF No. 214-23 at 1; ECF No. 218-37 at 1. Mr. Carter said nothing about rejecting the May 2 Rate Quotation and Contract. Nor was there any communication to FitzMark (1) that Just Play objected to the acceptance by tender

of goods provision in the May 2 Rate Quotation and Contract or (2) that Just Play maintained a policy against entering into written warehouse agreements.

### C. Just Play selects FitzMark as its new provider and never communicates any rejection of the May 2 Rate Quotation and Contract or the provision for acceptance through tendering goods.

On June 25, 2018, Mr. Carter called Mr. Gurrola to tell him Just Play had selected FitzMark as its new warehouse service provider. ECF No. 222-1 at 42. FitzMark began assembling a team to work on the Just Play account ahead of product delivery to the warehouse, which occurred on October 18, 2018. ECF No. 222-1 at 75, 80.

Just Play presented no evidence that between May 2, 2018 and October 18, 2018, Just Play ever communicated to FitzMark that (1) Just Play rejected the May 2 Rate Quotation and Contract; (2) Just Play rejected the acceptance by tendering goods provision in the May 2 Rate Quotation and Contract; or (3) Just Play had a policy of not entering into written warehouse agreements. Additionally, Just Play presented no evidence of any promises FitzMark made to Just Play that were not reflected in the May 2 Rate Quotation and Contract.

### D. Just Play tenders goods to FitzMark on October 18, 2018.

On October 18, 2018, Just Play tendered goods to FitzMark and FitzMark accepted those goods. ECF No. 222-1 at 80. Under the provisions of Section 1(b) of the May 2 Rate Quotation and Contract, Just Play and FitzMark had agreed to be

12

bound by the rates, terms, and conditions contained in that contract. May 2 Rate Quotation and Contract, Sec. 1(b).

On October 31, 2018, Mr. Gurrola emailed Mr. Carter, asking him to return a signed copy of the May 2 Rate Quotation and Contract and to fill out a credit application. ECF Nos. 214-38, 217-4. Mr. Gurrola told Just Play, "I also still need the warehouse agreement returned as well. . . . Need a signed copy back when you can please." ECF No. 214-38 at 1; ECF No. 217-4 at 1.

In response, Mr. Carter asked Mr. Gurrola to "resend the agreement, to ensure I have the correct one" and asked, "can we sign the agreement after these first few test orders and start the clock then rather than now?" ECF No. 214-38 at 1; ECF No. 217-4 at 1. The "clock" to which Mr. Carter referred, was FitzMark's 12-month rate lock, which began to run from the contract's formation date—October 18, 2018. ECF No. 222-1 at 80–81.

In response to Just Play's request for a "later start" to the rate clock, Mr. Gurrola sent a revised version of the May 2 Rate Quotation and Contract, that, he explained, extended the rate lock from 12 to 18 months. ECF No. 214-38 at 1; ECF No. 217-4 at 1. In response, 13 days after Just Play accepted the May 2 Rate Quotation and Contract by tendering goods, Mr. Carter told FitzMark for the first time that Just Play "doesn't like signing agreements." ECF No. 214-39 at 1; ECF No. 217-33 at 1. Mr. Carter went on to explain that Just Play did not need FitzMark

to extend the rate lock, saying "[t]hey actually want less time, can you change to one year?" ECF No. 214-39 at 1; ECF No. 217-33 at 1. Mr. Gurrola testified that he did not ascribe any import to Mr. Carter's comment about not "liking to sign agreements" because, "[b]y shipping product in, they agreed to the terms of the agreement." ECF No. 222-3 at 7.

After several months, Just Play increased the volume of goods it stored with FitzMark and requested a rate adjustment based on the increased volume. ECF No. 214-44. In January 2019, FitzMark accommodated Just Play's request and lowered its rates. *Id.* Several months later, issues arose in processing orders for the shipment of Just Play's goods. ECF No. 222-1 at 13, 48. Just Play subsequently decided to remove its product from FitzMark's warehouse. Day 2 Trial Tr. At 27–28.

At the end of the parties' relationship, FitzMark refused to release some of Just Play's goods because Just Play had not paid its outstanding warehouse invoices. ECF No. 218-22 at 2. Under the terms of the May 2 Rate Quotation and Contract, FitzMark asserted its rights to place a lien on the goods that remained in FitzMark's warehouse. May 2 Rate Quotation and Contract, Sec. 17. The parties negotiated the amount of FitzMark's outstanding invoices. ECF No. 215-43; Day 2 Trial Tr. at 91–99. During these negotiations, FitzMark repeatedly advised Just Play of its rights and the limitations of its liability under its contract with Just Play. ECF No. 215-43; Day 2 Trial Tr. at 91–101. No one from Just Play ever said to FitzMark that Just

14

Play had (1) rejected the May 2 Rate Quotation and Contract; (2) had a policy against entering into written contracts.

In the absence of the terms contained in the May 2 Rate Quotation and Contract, FitzMark would have had no legal basis on which to lien Just Play's goods. May 2 Rate Quotation and Contract, Sec. 17; *see also* Fla. Stat. §§ 677.209, 677.210. Had there been no basis to assert its warehouseman's lien, Just Play could have filed an action in replevin and retrieved its goods without paying FitzMark's lien. Just Play never threatened to do so, nor did it dispute the validity of FitzMark's ability to lien its goods. ECF No. 215-43; Day 2 Trial Tr. at 91–101. Instead, the parties agreed on payment terms and FitzMark released the goods over which it had exercised its lien. *Id.*

### E. Just Play claims to maintain an uncommunicated policy of not signing warehouse agreements.

Just Play's witnesses, including president Charlie Emby, testified at trial that it has an internal corporate policy against entering into written agreements with warehouses. *See, e.g.*, Day 1 Trial Tr. at 228; Day 2 Trial Tr. at 59–60; Day 3 Trial Tr. at 26; Day 4 Trial Tr. at 10–11. No witness testified that Just Play communicated the existence of an internal "no written contract policy" to FitzMark. On October 31, 2018, 13 days *after* Just Play accepted the terms of the May 2 Rate Quotation and Contract by tendering goods to FitzMark, Just Play sent FitzMark an email. ECF No. 222-1 at 80; ECF No. 214-38 at 1; ECF No. 217-4 at 1; ECF No. 217-32 at 1. In that

email, Just Play asked FitzMark if Just Play could "sign the agreement after these first few test orders." ECF No. 222-1 at 80; ECF No. 214-38 at 1; ECF No. 217-4 at 1; ECF No. 217-32 at 1. The October 31 email is direct evidence that Just Play *never* told FitzMark that it had a policy against entering into written contracts. Emby's own testimony demonstrates that this is so. Although Emby testified at trial that he created the in-house "no written contracts" policy for warehouses, Day 2 Trial Tr. at 60, in his deposition (which was offered at trial) he testified he did not know whether the contract between Just Play and FitzMark was written or oral. ECF No. 222-6 at 1–2.

## III.   Procedural History

### A.    The Pleadings

On March 5, 2020, Just Play filed its Complaint against FitzMark in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida; Case No. 502020CA002358XXXXMB. ECF No. 1 at 9–26. Just Play alleged three claims: (1) breach of contract; (2) promissory estoppel; and (3) unjust enrichment. *Id.* All three claims hinged on Just Play allegation that FitzMark "failed to perform" under "the parties' agreement" or "the Agreement." *Id.* ¶¶ 88, 93, 98, 104.

On April 17, 2020, FitzMark removed the case to the U.S. District Court for the Southern District of Florida based on diversity jurisdiction. ECF No. 1. On April 24, 2020, FitzMark filed its Answer and Affirmative Defenses. ECF No. 10. On

September 14, 2020, FitzMark filed an Amended Answer and Affirmative Defenses (ECF No. 27) and a Counterclaim for Declaratory Judgment (ECF No. 28). On October 5, 2020, Just Play filed an Answer and Affirmative Defenses to FitzMark's Counterclaim. ECF No. 35.

On December 16, 2020, the court entered an amended scheduling order. ECF No. 51. The court ordered the parties to exchange expert witness summaries or reports by February 16, 2021, to exchange rebuttal expert witness summaries or reports by March 15, 2021, and to complete all expert discovery by April 5, 2021. *Id.*

On January 13, 2021, FitzMark filed a notice of errata to alert the court that it had inadvertently attached the October 31, version of FitzMark's Rate Quotation (in which FitzMark offered to extend the length of its rate lock to 18-months) to its Counterclaim. ECF No. 59. On February 19, 2021, Just Play moved to strike FitzMark's notice of errata. ECF No. 66. On April 6, 2021, the court granted the motion to strike. ECF No. 81.

### B.    Discovery

Gurrola gave 2 depositions in this case that were presented to the jury. He was first deposed on January 14, 2021. ECF No. 183-3. In that deposition, Gurrola explained that the May 2 Rate Quotation and Contract became effective between

17

Just Play and FitzMark upon FitzMark's first receipt of Just Play goods in October 2018. ECF No. 183-3 at 131.

After this deposition, Just Play then deposed FitzMark's Rule 30(b)(6) deponent, Mark Hurley. ECF No. 183-2. During this deposition, FitzMark adopted testimony from Gurrola's January 14, 2021, deposition as the corporate testimony for FitzMark on certain topics. ECF No. 183-2. After Hurley's deposition, Just Play asked the court for leave to depose Gurrola again, and the court "grant[ed] leave for Just Play to conduct a limited second corporate representative deposition which shall be limited to two hours and shall only address the certain noticed topics FitzMark deferred to Mr. Gurrola's testimony." ECF No. 85 at 4. Gurrola's second deposition occurred on May 19, 2021. ECF No. 183-4.

## C.    Trial

### 1.    Just Play focuses on alleged oral contract.

The jury trial began on September 13, 2021. In presenting its case to the jury, Just Play focused exclusively on its theory that Just Play had entered into an oral contract with FitzMark during a June 25, 2018 telephone conversation. *See, e.g.*, Plaintiff's Opening Statement, Day 2 Trial Tr. at 140 ("We are here today, ladies and gentlemen, because the Defendant in this case, FitzMark, entered into an oral agreement with our client, Just Play, and FitzMark failed to do what it promised to do under that oral agreement."); Plaintiff's Closing Argument, Day 5 Trial Tr. at 39

("We are here today because Just Play is asking you to enforce the oral agreement that it entered into with FitzMark."); *id.* ("The questions that Just Play is going to ask you to answer are: Was there an oral contract between Just Play and FitzMark? Did FitzMark breach that contract? And what is the amount of damages that Just Play suffered as a result of that breach?"). On its promissory estoppel theory, Just Play told the jury next to nothing.

### 2. Just Play argues Gurrola's testimony regarding a legal contention is binding.

Over FitzMark's objections, Just Play presented the following testimony from Gurrola's second deposition concerning the May 2 Rate Quotation and Contract:

Q: And this is not the warehouse agreement that Fitzmark contends governs the relationship between Fitzmark and Just Play, correct?

THE WITNESS: It is not, correct.

ECF No. 222-3 at 2.

FitzMark objected to this testimony before trial when Just Play designated it in its pretrial deposition designations. *See, e.g.*, ECF No. 143-2 at 7. The court heard argument on FitzMark's objections. Day 1 Trial Tr. at 18–27, 119–30. FitzMark argued that the question was beyond the scope of the topics the court had authorized for the second deposition. *Id*. FitzMark further argued that the question inappropriately sought a legal conclusion from Gurrola regarding what FitzMark contended was the governing contract. *Id*.

19

After the court overruled FitzMark's objections, FitzMark's counsel asked Just Play's counsel to "commit that she would not be arguing in closing that the corporation FitzMark is precluded from asserting that the May 2nd agreement is the controlling agreement based on Mr. Gurrola's testimony and if she is unprepared to do that. I believe then that I have to move for a mistrial immediately after the introduction of the evidence." Day 2 Trial Tr. at 7. Just Play's counsel confirmed that Just Play did not intend to use the testimony for that purpose but instead would only use the testimony to show what Gurrola "[i]n their mind, what they believed." Day 2 Trial Tr. at 7–8.

Despite that representation, Just Play's counsel argued in closing that (1) "when Tony Gurrola speaks, it is not just individually, it is on behalf of the whole company," Day 5 Trial Tr. at 42–43, and that "Tony Gurrola [] is the binding voice of the company, *id.* at 45–46. At the very end of the closing, just before she played a video clip of the testimony, Just Play's counsel said: "The final thing and perhaps the most important is Tony Gurrola. You will hear and you have heard from everyone on the Just Play side that the May 2nd agreement is not the agreement, the actual document is not the agreement. But perhaps the most important person to hear from is Tony Gurrola himself who testified about this agreement as the corporate representative." *Id.* at 63. And then right after the clip was played, Just Play's counsel doubled down for good measure: "The only person with personal knowledge

testified in his corporate capacity that that email from May 2nd attaching the contract was not the agreement[.]" *Id.* Finally, at the end of Just Play's rebuttal, Just Play's counsel again said that FitzMark's "own corporate representative with binding testimony said unequivocally to you" that the May 2 Rate Quotation and Contract was "not the agreement." Day 5 Trial Tr. at 85.

### 3. FitzMark moves for judgment as a matter of law.

At the close of Just Play's case, FitzMark moved for judgment as a matter of law under Fed. R. Civ. P. 50, because there was no evidence to support the formation of the oral contract Just Play alleged was formed during the June 25, 2018 phone call between Mr. Gurrola and Mr. Carter. Day 4 Trial Tr. at 184–92; ECF No. 198. FitzMark explained that (1) the only two parties to that phone call were Mr. Gurrola and Mr. Carter; and (2) both Mr. Gurrola and Mr. Carter testified that they did not remember what the parties discussed on the phone call. Day 4 Trial Tr. at 184–92; ECF No. 198. Indeed, Mr. Carter testified that "we never really discussed contract terms. We only reviewed rates and scope of work." ECF No. 222-1 at 52. In other words, Just Play failed to present evidence of the essential terms of the alleged oral contract reached between the parties on June 25, 2018. Day 4 Trial Tr. at 184–92; ECF No. 198.

FitzMark also argued the evidence conclusively established that Just Play had accepted the May 2 Rate Quotation and Contract when it tendered goods to FitzMark on October 18, 2018. Day 4 Trial Tr. at 184–92; ECF No. 198.

The court denied the motion. ECF No. 209. The court concluded that there was evidence from which the jury could conclude that Just Play rejected the May 2 Rate Quotation and Contract, because "Dove Carter also testified [that Just Play had a no written contracts policy], including that he conveyed that information to Tony Gurrola." *Id.* There was no evidence in the record that Mr. Carter ever told Mr. Gurrola that Just Play had a "no written contracts" policy. Having denied FitzMark's motion based on evidence that did not exist, the court held Just Play produced evidence during trial from which a reasonable jury could conclude that the parties' entered into an oral agreement for the provision of warehouse services. *Id.* at 2. The court likewise held that "because the validity of the subject contract is disputed," the court would not grant judgment on Just Play's promissory estoppel and unjust enrichment claims. ECF No. 209 at 3.

### 4. The court rejects FitzMark's proposed jury instructions and verdict form on promissory estoppel.

The parties disagreed about the level of specificity required for the promissory estoppel instructions and jury verdict form. FitzMark proposed the court to instruct the jury, consistent with Just Play's Complaint, that Just Play must prove: "FitzMark promised to provide following services: (1) maintain electronic data interchange

(EDI) file exchange capabilities; (2) provide UCC-128 carton labels; (3) generate packing lists and bills of lading; (4) provide order management services, including online portal visibility to inventory and order tracking, end-of-day on hand inventory reports, and EDI Advance Ship Notices; and (5) maintain Just Play's goods directly on the warehouse floor and not in overhead racks." ECF No. 177 at 48. On the other hand, Just Play proposed the court to instruct the jury that Just Play must prove "FitzMark promised to perform warehousing services for Just Play." *Id.*

On the verdict form, FitzMark likewise proposed the first question on the promissory estoppel claim mirror Just Play's allegations: "Did Just Play prove by clear and convincing evidence that FitzMark promised to provide the following services: (1) maintain electronic data interchange (EDI) file exchange capabilities; (2) provide UCC-128 carton labels; (3) generate packing lists and bills of lading; (4) provide order management services, including online portal visibility to inventory and order tracking, end-of-day on hand inventory reports, and EDI Advance Ship Notices; and (5) maintain Just Play's goods directly on the warehouse floor and not in overhead racks." ECF No. 178-1 at 5. Just Play proposed the following for the first question on the promissory estoppel claim "Do you find by clear and convincing evidence that FitzMark promised to perform services for Just Play?" ECF No. 168-1 at 4.

The court addressed the parties' disagreement in open court. Day 3 Trial Tr. at 187. FitzMark explained that the specificity in its proposed instructions matched the promises Just Play alleged in its Complaint regarding the promises FitzMark made. *Id.* at 187–89. The court stated it "would look into it further," but that the court's "inclination [was] just to include the more general language offered by Plaintiff." *Id.* at 189. The court similarly took the jury verdict form regarding promissory estoppel under advisement. *Id.* at 200.

The court ultimately rejected FitzMark's proposals. ECF No. 200. The court instructed the jury that "To recover damages from FitzMark for promissory estoppel, Just Play must prove all of the following by clear and convincing evidence: One: FitzMark promised to perform warehousing services for Just Play." Day 5 Trial Tr. at 27. Additionally, the final verdict form asked "Did Just Play prove by clear and convincing evidence each of the following: (1) FitzMark promised to perform warehouse services for Just Play." ECF No. 205 at 3.

### 5. The jury renders a verdict for Just Play on promissory estoppel.

On September 20, 2021, the jury returned a verdict for Just Play. ECF No. 205. The jury concluded Just Play had not proven its oral contract claim, FitzMark had not proven the parties agreed to be bound by the May 2 Rate Quotation and Contract, and Just Play had not proven its unjust enrichment claim. *Id.* The jury

concluded Just Play proved its promissory estoppel claim and awarded $3,959,134 in damages. *Id.*

### D.    Renewed Motion for Judgment as a Matter of Law and Appeal

The court entered final judgment on September 23, 2021. ECF No. 210. On October 18, 2021, FitzMark filed its renewed motion for judgment as a matter of law. ECF No. 226. FitzMark argued that the evidence conclusively established that the parties entered into the May 2 Rate Quotation and Contract; accordingly, the jury's verdict on the promissory estoppel claim could not stand. *Id.* FitzMark also argued that the Jury's verdict for Just Play on its promissory estoppel claim was unsupported because there was also no evidence presented that FitzMark made any "definite and substantial" promises to Just Play independent of those contained in the May 2, 2018 Rate Quotation. *Id.*

In its opposition, Just Play cited 26 exhibits and testimony from 4 witness. Of the 26 exhibits, only 8 reflect communications between Just Play and FitzMark between January 2018, (the time the parties began exploring their relationship) and October 18, 2018, (the date FitzMark accepted Just Play's tender product to FitzMark). ECF No. 239-1. None of the 26 exhibits on which Just Play relies ever mentions that (1) Just Play had a policy against entering into written agreements; (2) Just Play rejected the alternate forms of acceptance contained in the May 2 Rate Quotation and Contract; or (3) Just Play objected to, let alone rejected, the terms and

conditions contained in the Rate Quotation and Contract. ECF No. 239-1 (chart summarizing exhibits on which Just Play relied).

As to witness testimony, Just Play relied on (1) Charlie Emby; (2) Michael Borchert; (3) Dove Carter; and (4) Tony Gurrola. None of these witnesses testified that anyone from Just Play ever advised anyone from FitzMark that (1) Just Play had a policy against entering into written agreements; (2) Just Play rejected the alternate forms of acceptance contained in the Rate Quotation and Contract; or (3) Just Play objected to, let alone rejected, the terms and conditions contained in the Rate Quotation and Contract. ECF No. 239-2 (attachment highlighting testimony on which Just Play relied).

The court denied the motion. ECF No. 248. The court concluded Just Play offered sufficient evidence to permit a jury finding that Just Play never agreed to be bound by the May 2 Rate Quotation and Contract. *Id.* at 4. The court concluded that FitzMark waived any evidentiary challenge to the promissory estoppel claim because, in FitzMark's first Rule 50 motion, it "focused exclusively in that motion on the existence-of-a-written-contract theory." *Id.* at 5. The court then concluded that "viewing all of the evidence before it, a reasonable jury could conclude that Plaintiff proved the elements of promissory estoppel by clear and convincing evidence—specifically, that Defendant made definite and substantial promises that it would provide satisfactory tracking, labeling and warehousing services, and that

Plaintiff justifiably relied on those promises to its detriment by making payments to Defendant, entrusting Defendant with its goods, and then incurring significant losses as a result of substantial warehouse deficiencies and delays." *Id.* at 6–7.

On January 19, 2022, FitzMark timely filed its notice of appeal. ECF No. 249.

## IV.     Standards of Review

The Court "review[s] a district court's ruling on a renewed motion for judgment as a matter of law *de novo* and appl[ies] the same standards as the district court." *Equal Emp't Opportunity Comm'n v. Exel, Inc.*, 884 F.3d 1326, 1329 (11th Cir. 2018). For jury instructions, the standard of review "is simultaneously *de novo* and deferential." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014). This Court applies the same standard of review to the verdict form. *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1072 (11th Cir. 1996).

## SUMMARY OF THE ARGUMENT

The written May 2 Rate Quotation and Contract between Just Play and FitzMark renders the jury's promissory estoppel verdict void—Florida will not allow parties to a contract to pursue *quasi* contractual claims arising out of the same subject matter. The evidence at trial established and Just Play conceded that (1) FitzMark sent Just Play a proposed warehouse agreement on May 2, 2018; (2) the proposed warehouse agreement could be accepted by signature or by tendering goods to FitzMark more than 30 days after receipt; and (3) Just Play tendered goods to

FitzMark on October 18, 2018. Just Play contended at trial, that its act of tendering goods did not effectuate the formation of a written contract because Just Play expressly rejected the proposed contract before Just Play tendered goods to FitzMark on October 18, 2018.

At the close of Just Play's case-in-chief, FitzMark moved for judgment as a matter of law because Just Play adduced no evidence that it *ever* rejected the terms of the proposed warehouse agreement. No witness testified that Just Play ever told FitzMark that Just Play rejected the terms of the proposed warehouse agreement. No exhibit admitted into evidence at trial reflected Just Play's rejection of the proposed warehouse agreement. The district court improperly denied FitzMark's motion. At the close of trial, FitzMark renewed its motion for judgment as a matter of law. This Court cannot affirm the district court's rulings without invalidating decades of Florida law enforcing contracts that have been accepted through tender of goods.

The district court also committed reversible error by improperly instructing the jury on the requirements of promissory estoppel. Florida law requires that promissory estoppel claims be based on specific, definite promises. FitzMark submitted proposed instructions that track Florida's pattern jury instructions and identified the specific promises alleged in Just Play's complaint.

The district court improperly rejected FitzMark's instructions and instead instructed the jury that it need only considered whether "FitzMark promised to

perform warehousing services for Just Play." The court erred by expanding Just Play's promissory estoppel theory beyond the "promises" Just Play alleged formed the basis of its promissory estoppel claim. The court also erred because its instructions conflict with the level of specificity required to prove a claim for promissory estoppel under Florida law. A promise to perform "warehouse services" is the kind of vague, non-specific promise that is too indefinite to support a claim for promissory estoppel under Florida law.

## ARGUMENT

### I.    The District Court Should Have Granted FitzMark's Renewed Rule 50 Motion.

Federal Rule of Civil Procedure 50(a)(2) provides that a party may move for judgment as a matter of law "before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). The motion "must specify the judgment sought and the law and facts that entitle the movant to the judgment." *Id.* If the district court does not grant the motion, then the movant may file a "renewed motion" under Rule 50(b) after trial. *See Smart v. City of Miami*, 740 F. App'x 952, 958 (11th Cir. 2018) (quoting Fed. R. Civ. P. 50(b)).

The Court "review[s] a district court's ruling on a renewed motion for judgment as a matter of law de novo and apply the same standards as the district court." *Equal Emp't Opportunity Comm'n. v. Exel, Inc.*, 884 F.3d 1326, 1329 (11th Cir. 2018). Judgment as a matter of law is appropriate "only if the facts and

inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1275 (11th Cir. 2008) (citation omitted). "We consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party." *Id.* (internal quotation marks and citation omitted).

The jury returned a verdict in favor of Just Play on the promissory estoppel claim. Under Florida law, however, a claim for promissory estoppel is not available when a written contract exists between the parties covering the subject matter of the dispute. *See Baron v. Osman*, 39 So. 3d 449, 451 (Fla. Dist. Ct. App. 2010). The evidence at trial conclusively established that Just Play and FitzMark agreed to be bound by the May 2 Rate Quotation and Contract. Accordingly, the district court should have granted FitzMark's renewed Rule 50 motion and directed entry of judgment for FitzMark.

### A.    The trial evidence conclusively established the parties agreed to be bound by the May 2 Rate Quotation and Contract.

The fundamentals of contract law dictate that the jury's verdict must be overturned and that this Court should order the district court to enter judgment in Just Play's favor. There is no dispute that if an express contract embracing the subject matter of the disagreement exists, there can be no claim for implied or quasi contract. There is no dispute that FitzMark's May 2 Rate Quotation was an offer to contract for warehousing services. There is no dispute that, if Just Play had accepted

that offer, it was supported by consideration. The *only* dispute with respect to the May 2 Rate Quotation is whether Just Play accepted it. If it did not, *then and only then*, is it appropriate to turn to the question of whether Just Play is entitled to damages for promissory estoppel.

The question of whether Just Play accepted FitzMark's offer is governed by straight-forward principles. First, FitzMark was the master of the offer and was "free to invite acceptance by conduct and [] to propose limitations on the kind of conduct that constitutes acceptance." *Dye v. Tamko Bldg. Prods., Inc.*, 908 F.3d 675, 680 (11th Cir. 2018). A warehouse can invite a shipper to accept a written contract by tendering of goods. *Fujifilm N. Am. Corp. v. D/C Exp. & Domestic Packing, Inc.*, 339 F. Supp. 3d 790, 798–99 (N.D. Ill. 2018); *W.A. Taylor & Co. v. Griswold & Bateman Warehouse Co.*, 719 F. Supp. 697, 702 (N.D. Ill. 1989); *see also Menorah Ins. Co., Ltd. v. W.F. Whelan Co., Inc.*, 110 F. App'x 524, 526–27 (6th Cir. 2004) (an assumption exists that "contracting parties will use standardized forms for storage agreements" and that "[b]y storing the equipment, a [depositor of goods] accepts the terms in the standardized form"). The shipper need not sign the contract to be bound by it because "[t]he object of a signature is to show mutuality or assent," and "these facts may be shown in other ways, for example, by the acts or conduct of the parties." *Gateway Cable T. V., Inc. v. Vikoa Const. Corp.*, 253 So. 2d 461, 463 (Fla. Dist. Ct. App. 1971); *W.A. Taylor & Co.*, 719 F. Supp. at 702 (holding, in

31

context of warehouse contract enforcement case, the "failure to sign the agreement is meaningless, for the Rate Quotation expressly says the act of shipping the goods constitutes acceptance of the terms.").

Second, "the making of a contract depends only on what the parties said or did[,]" not on the "parties' thoughts or unspoken intentions." *In re Stand. Jury Instructions—Contract and Bus. Cases*, 116 So. 3d 284, 305 (Fla. 2013). "[T]he test of the true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Med-Star Cent., Inc. v. Psychiatric Hosps. of Hernando Cnty., Inc.*, 639 So. 2d 636, 637 (Fla. Dist. Ct. App. 1994). If Just Play acted "in such a way as to justify" FitzMark's belief "the writing [was] assented to," then Just Play should "be bound both by law and in equity." *All Fla. Sur. Co. v. Coker*, 88 So. 2d 508, 510 (Fla. 1956). That means Just Play could only have rejected the offer by *communicating* its rejection to FitzMark before its tender of goods to the California warehouse. There is no evidence to support *even an inference* that Just Play rejected the May 2 Rate Quotation and Contract.

### 1.    Just Play accepted the May 2 Rate Quotation and Contract when it tendered goods to FitzMark.

Acceptance "in the mode, at the place, and within the time expressly or impliedly stated within the offer," necessarily results in an enforceable contract. *See Gillespie v. Bodkin*, 902 So. 2d 849, 850 (Fla. Dist. Ct. App. 2005). "There are no

magic words required to accept an offer. It is only necessary to match the terms of the offer to result in an enforceable contract." *Id.*

After several months of negotiations, FitzMark sent Just Play the May 2 Rate Quotation and Contract. *See supra* Statement of the Case, § II.B. To be sure, it was not the first such agreement that FitzMark had sent Just Play, but it was the version that Just Play ultimately accepted. *Id.*, §§ II.B & D. The timeline is dispositive. On May 2, 2018, FitzMark sent the May 2 Rate Quotation and Contract to Just Play. ECF Nos. 214-19, 214-20, 217-45. The May 2 Rate Quotation and Contract contained express language that invited acceptance by the tender of goods. May 2 Rate Quotation and Contract, Sec. 1. If the tender of goods was more than 30 days after the proposal, the language of the May 2 Rate Quotation and Contract contemplates that a final and enforceable contract exists once FitzMark accepts those goods. *Id.* On October 18, 2018, Just Play tendered goods to FitzMark and FitzMark accepted them. ECF No. 222-1 at 80. In combination, those actions formed an enforceable written agreement between the parties. *Nowlin v. Nationstar Mortg., LLC*, 193 So. 3d 1043, 1045 (Fla. Dist. Ct. App. 2016) (noting "acceptance is the last act necessary to complete the contract").

### 2. There is no evidence that Just Play rejected the May 2 Rate Quotation and Contract.

Just Play presented no evidence that *anyone* from Just Play ever advised *anyone* from FitzMark that (1) Just Play had a policy against entering into written

agreements; (2) Just Play rejected the alternate forms of acceptance contained in the May 2 Rate Quotation and Contract; or (3) Just Play objected to, let alone rejected, the terms and conditions contained in the May 2 Rate Quotation and Contract. The district court's order denying FitzMark's renewed Rule 50 motion did not identify any evidence that would support a finding or an inference that Just Play rejected the May 2 Rate Quotation and Contract or any of its terms.

### a.    Gurrola's testimony does not support the verdict.

Gurrola gave 2 depositions in this case that were presented to the jury. In the first, he explained that the final written proposal he sent to Just Play was the May 2 Rate Quotation and Contract and that this contract became effective between Just Play and FitzMark upon FitzMark's first receipt of Just Play goods in October 2018. ECF No. 222-1 at 80–82.

The district court identified a single question from Gurrola's second deposition to support its conclusion that sufficient evidence existed to permit a jury finding that Just Play rejected the May 2 Rate Quotation and Contract:

Q: And this is not the warehouse agreement that Fitzmark contends governs the relationship between Fitzmark and Just Play, correct?

THE WITNESS: It is not, correct.

ECF No. 222-3 at 2.

This testimony cannot support an inference that Just Play rejected the May 2 Rate Quotation and Contract. First, the question inquired as to FitzMark's legal position as to whether a particular exhibit was the "operative contract." But whether a contract was formed between Just Play and FitzMark turns on facts and evidence, not on legal contentions. *Cf. CT Miami, LLC v. Samsung Elecs. Latinoamerica Miami, Inc.*, 201 So. 3d 85, 96 (Fla. Dist. Ct. App. 2015) (noting legal arguments "can't change the facts" regarding contract formation). Lay witnesses, whether designated as a corporate designee or not, are not competent to offer legal opinions on the import of factual record. *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness [] may not testify to the legal implications of conduct.").

Second, at best, Gurrola's response reflects his personal understanding of FitzMark's position—*i.e.*, what contract "Fitzmark contends governs the relationship between Fitzmark and Just Play." *Id.* In the court's words, the testimony demonstrated what was in Gurrola's "mind, what [he] believed," at the time of deposition. Day 2 Trial Tr. at 7–8. Gurrola's subjective beliefs are irrelevant to whether the parties' objective actions led to the formation of an enforceable contract when Just Play tendered goods on October 18, 2018. "[C]ontracts are formed by objective acts, not subjective beliefs." *Bowen v. Taylor-Christensen*, 98 So. 3d 136,

140–41 (Fla. Dist. Ct. App. 2012), *approved sub nom. Christensen v. Bowen*, 140 So. 3d 498 (Fla. 2014).

Finally, Gurrola's testimony in *May 2021* about what he believed to be FitzMark's then current contentions says nothing about whether Just Play's tender of goods nearly *3 years earlier* effectuated its acceptance of the May 2 Rate Quotation and Contract. *Roden v. Bergen Brunswig Corp.*, 132 Cal. Rptr. 2d 549, 556 (Cal. Ct. App. 2003) ("[P]ost-acceptance communications are irrelevant.").

### b. FitzMark's offer to extend the rate lock and the parties' rate negotiations do not support the verdict.

The district court said "that a modified contract was sent to Plaintiff on October 31, 2018, and that the parties continued negotiating the invoice rates up until January 2019." ECF No. 248 at 4. These observations do not support the verdict.

The fact that FitzMark made an offer to Just Play to extend the rate lock is not evidence that Just Play rejected the May 2 Rate Quotation and Contract. FitzMark's offer to extend the rate lock was made 13 days after Just Play had already accepted the May 2 Rate Quotation and Contract by tendering goods on October 18, 2018. The parties' "post-acceptance communications are irrelevant." *Roden v. Bergen Brunswig Corp.*, 132 Cal. Rptr. 2d 549, 556 (Cal. Ct. App. 2003); *Mills v. Innovative Energy Glob., Ltd.*, No. 3:09-CV-294-MCR-CJK, 2011 WL 1299938, at *7 (N.D. Fla. Mar. 31, 2011) ("Because a binding contract had already been entered in

December 2007 by Khan's offer and Mills' acceptance, the June 4 email was not effective to revoke it.").

Likewise, the fact that FitzMark agreed to accommodate Just Play's request for lower warehousing rates in January 2019—more than 2 months after the contract was formed—provides no evidence that Just Play "rejected" the May 2 Rate Quotation and Contract before it tendered goods on October 18, 2018. A party's decision not to stand on its contractual rights has no impact on whether the contract was formed and does not render the contract void ab initio. *Cf.* 13 Williston on Contracts § 39:18 (4th ed. 2022) (parties to a contract may waive some provisions without disturbing rest of contract).

### c. Carter's testimony that he told FitzMark "several times" that Just Play would not sign does not support the verdict.

The district court said that "Plaintiff's Director of Operations—Dove Carter—stated that he had expressed to Defendant's representative 'several times' that Plaintiff would not sign the May 2, []Rate Quotation []." ECF No. 248 at 5. This is not evidence that Just Play rejected the May 2 Rate Quotation and Contract.

First, the testimony the district court cited related to an earlier contract proposal from FitzMark that was sent on April 11, 2018. ECF No. 222-1 at 19–20. Carter *never* testified that he told anyone at FitzMark that Just Play would not sign the May 2 Rate Quotation and Contract.

37

Second, even if Carter's testimony could be inferred as applying to the May 2 Rate Quotation and Contract, he said only that Just Play would not sign. Carter never testified he told anyone at FitzMark that (1) Just Play rejected the May 2 Rate Quotation and Contract; (2) Just Play objected to the acceptance by tender of goods provision in the May 2 Rate Quotation and Contract; (3) Just Play would not enter into the May 2 Rate Quotation and Contract; or (4) that Just Play had a policy against entering into written contracts. Indeed, the direct evidence admitted at trial—that Just Play asked if it could "sign the agreement" after it had accepted the May 2 Rate Quotation and Contract—forecloses any inference that anyone from Just Play ever advised FitzMark that Just Play had a policy against entering into written contracts or had rejected the May 2 Rate Quotation and Contract. ECF No. 214-38 at 1; ECF No. 217-4 at 1. In other words, Just Play presented no evidence that it communicated to FitzMark that Just Play's deposit of goods in October 2018 was anything but Just Play's agreement to be bound by the May 2 Rate Quotation and Contract.

### d. Just Play's uncommunicated corporate policy against entering warehouse agreements does not support the verdict.

Finally, in denying FitzMark's renewed motion, the court also relied on testimony from Charlie Emby and Michael Borchert that Just Play's "policy was not to enter into written contracts for warehouse services." ECF No. 248 at 5. Again, no witness, including Emby or Borchert, testified that Just Play ever communicated to

FitzMark that (1) Just Play had a policy against entering into written agreements; (2) Just Play rejected the May 2 Rate Quotation and Contract; or (3) Just Play objected to that provision in the May 2 Rate Quotation and Contract permitting acceptance by tendering goods. "[A] party's latent, or undisclosed, intention not to be bound does not prevent the formation of a binding contract." 17 Corpus Juris Secundum Contracts § 50.

For that reason, "evidence of the unilateral secret intent of a party to a written instrument is in and of itself immaterial to the actual creation of a contract." *Gendzier v. Bielecki*, 97 So. 2d 604, 609 (Fla. 1957) (citations omitted). Emby and Borchert's "testimony consisted of uncommunicated subjective impressions that were irrelevant to the question of whether [Just Play] and [FitzMark] reached a[n] [] agreement." *Londono v. City of Gainesville*, 768 F.2d 1223, 1227 n.4 (11th Cir. 1985).

Rather than rely on Just Play's uncommunicated subjective impressions, the district court should have considered the evidence regarding the parties' objective manifestations. This evidence conclusively established that when Just Play tendered goods to FitzMark on October 18, 2018, it accepted the May 2 Rate Quotation and Contract.

**B.    Alternatively, there was insufficient evidence to support the promissory estoppel claim.**

**1.    The Jury's verdict for Just Play on its promissory estoppel claim is unsupported by the evidence presented at trial.**

Promissory estoppel requires that claims "(1) be based on promises that are definite and substantial in nature; (2) show justifiable reliance on the promises made; and (3) show detrimental reliance on such promises. The promise must be definite, of a substantial nature, and established by clear and convincing evidence." *Great Lakes Reinsurance (UK) PC v. Roca*, No. 07-23322-CIV, 2009 WL 200257 (S.D. Fla. Jan. 23, 2009) (citing *W.R. Grace & Co. v. Geodata Serv. Inc.*, 547 So.2d 919, 920, 924–25 (Fla. 1989)).

Just Play submitted no evidence of an oral agreement with "certain and definite" terms. There was also no evidence presented that FitzMark made any "definite and substantial" promises to Just Play, independent of those contained in the May 2 Rate Quotation and Contract. No witness offered any testimony on this point and neither party submitted any documentary evidence that described or outlined any "definite and substantial" promise by FitzMark.

**2.    FitzMark preserved its challenge.**

In presenting its case to the jury, Just Play focused exclusively on its theory that Just Play had entered into an oral contract with FitzMark during a June 25, 2018 phone call. *See supra* Statement of the Case, § III.C.1. At the close of Just Play's case, FitzMark moved for judgment as a matter of law under Fed. R. Civ. P. 50. Day

4 Trial Tr. at 184–92; ECF No. 198. FitzMark explained that (1) the only two parties to that phone call were Mr. Gurrola and Mr. Carter; and (2) both Mr. Gurrola and Mr. Carter testified that they did not remember what the parties discussed on the phone call. Day 4 Trial Tr. at 184–92; ECF No. 198. Indeed, Mr. Carter's testimony was that "we never really discussed contract terms. We only reviewed rates and scope of work." ECF No. 222-1 at 52. In other words, Just Play failed to present evidence of the essential terms of the alleged oral contract reached between the parties on June 25, 2018. Day 4 Trial Tr. at 184–92; ECF No. 198. Necessarily, then, it failed to present "clear and convincing" evidence of definite and specific promises to perform made by FitzMark to Just Play. *See, e.g.*, ECF No. 200 at 10 ("'Clear and convincing evidence' is a higher standard of proof than proof by a preponderance of the evidence.").

Although FitzMark's original Rule 50 motion did not explicitly address the individual elements of Just Play's promissory estoppel a claim, FitzMark sufficiently preserved the issue for appeal. Preservation does not require "complete identity of issues." *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1109 n.12 (11th Cir. 2020). Rather, courts consider whether the Rule 50(a) and Rule 50(b) issues are "closely related." *Id.* If they are, the issue is preserved. But if "the old and new grounds 'vary greatly,'" then the "district court [is] prohibited from relying on those new grounds in setting aside the jury's verdict." *Id.*; *see also Bartley v. Kim's Enter. of Orlando,*

*Inc.*, 568 F. App'x. 827, 835 n.6 (11th Cir. 2014) ("Although FIP, in moving for judgment as a matter of law, did not specifically argue—as it does on appeal—that the police were entitled to detain the plaintiffs to ensure officer and public safety, it did make the broader claim that the challenged detention was lawful. Having preserved that broader claim in the district court, FIP is not precluded from raising new arguments in support of that claim on appeal." (citations omitted)).

FitzMark's two Rule 50 motions did not "vary greatly." At bottom, FitzMark argued in both that (1) Just Play accepted the May 2 Rate Quotation and Contract when it tenerded goods on October 18, 2018; and (2) Just Play failed to adduce evidence sufficient to show FitzMark made any other legally enforceable promise to Just Play. Because FitzMark challenge to Just Play's oral contract was "closely related," it presered its challenge to Just Play's promissory estoppel claim.

## II.   The District Court Adopted Erroneous Jury Instructions and Jury Verdict.

### A.   The court should have instructed the jury that Just Play had to prove by clear and convincing evidence that FitzMark made specific promises to Just Play on which Just Play relied.

For jury instructions, the standard of review "is simultaneously *de novo* and deferential." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014). "We review jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." *Id.* (internal quotation marks omitted). "So long as the jury instructions accurately

reflect the law," the trial judge has "wide discretion as to the style and wording employed." *Ermini v. Scott*, 937 F.3d 1329, 1335 n.2 (11th Cir. 2019) (internal quotation marks omitted). "We will reverse the trial court because of an erroneous instruction only if we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Bearint ex rel. Bearint v. Dorell Juv. Grp.*, 389 F.3d 1339, 1351 (11th Cir. 2004) (internal quotation marks omitted).

In Florida, not all promises are actionable through a claim for promissory estoppel. Rather, the promise must be "definite, of a substantial nature, and established by clear and convincing evidence." *W.R. Grace and Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 920 (Fla. 1989). Plaintiffs must point to specific promises that are definite as to their terms; "indefinite" promises are insufficient. *Id.* at 924–25.[4] For example, a promisor's statement that it "had what [the promisee] needed" fails to "rise to the level of specificity required." *Prof. Underwriters Ins. Co. v. Freytes & Sons Corp., Inc.*, 565 So. 2d 900, 903 (Fla. Dist. Ct. App. 1990); *Tome v. State Farm Fire and Cas. Co.*, 125 So. 3d 864, 867 (Fla. Dist. Ct. App. 2013).

---

[4] *See also Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1350 (S.D. Fla. 1999) ("vague" promise was insufficient), *aff'd sub nom. Eclipse Med., Inc. v. Am. Hydro-Surgical*, 235 F.3d 1344 (11th Cir. 2000) (unpublished); *Camina Serv. Inc. v. Shell Oil Co.*, 816 F. Supp. 1533, 1540 (S.D. Fla. 1992) (citing *W.R. Grace*, the court held that "application of promissory estoppel may be rejected if the terms of the promise are indefinite.")

Given these standards, it is unsurprising that when Just Play filed its Complaint, it explained in detail the promises on which it based its claim for promissory estoppel. Just Play alleged:

- FitzMark promised to "perform the following Services: a. Maintain Electronic Data Interchange ('EDI') file exchange capabilities; b. Provide UCC-128 carton labels; c. Generate packing lists and bills of lading; d. Provide order management services, including online portal visibility to inventory and order tracking, end-of-day on hand inventory reports, and EDI Advance Ship Notice ('ASN') to be sent at the time of shipping to Just Play's customers; and e. Maintain Just Play's goods directly on the warehouse floor, and not in overhead racks that require significantly more retrieval time." ECF No. 1 at 24.

- "Just Play reasonably and detrimentally relied on FitzMark's promise to perform the Services." *Id.*

- "In reliance on FitzMark's promise to perform the Services, Just Play paid FitzMark the agreed upon rates." *Id.*

- "FitzMark reasonably should have expected that its promise to provide the Services would induce Just Play's reliance." *Id.*

- "FitzMark failed to perform the Services." *Id.*

44

- "Injustice can be avoided only by enforcement of FitzMark's promise to Just Play." *Id.*

Based on Just Play's own pleading and the requirement under Florida law that promissory estoppel claims be based on specific, definite promises, FitzMark proposed the court to instruct the jury that Just Play must prove: "FitzMark promised to provide following services: (1) maintain electronic data interchange (EDI) file exchange capabilities; (2) provide UCC-128 carton labels; (3) generate packing lists and bills of lading; (4) provide order management services, including online portal visibility to inventory and order tracking, end-of-day on hand inventory reports, and EDI Advance Ship Notices; and (5) maintain Just Play's goods directly on the warehouse floor and not in overhead racks." ECF No. 177 at 48. FitzMark's proposed instructions were identical to Florida's pattern jury instructions for promissory estoppel, the only difference being that FitzMark's proposal replaced the generic "promise" with the promises alleged in Just Play's complaint.

The court rejected FitzMark's proposal, instead instructing the jury that it need only consider whether "FitzMark promised to perform warehousing services for Just Play." Sept. 17 Tr. at 27. The court erred for two reasons. First, the court erred by expanding Just Play's promissory estoppel theory beyond the "promises" Just Play alleged formed the basis of its promissory estoppel claim. *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1194 (11th Cir. 1995) (proper formulation of jury

instructions must consider "the allegations of the complaint"). Just Play did not premise its promissory estoppel claim based on an amorphous promise to provide "warehousing services." Rather, Just Play identified specific services it claims FitzMark promised it. The court's instructions should have matched what Just Play actually plead. *Id.*

Second, the court erred because its instructions conflict with the level of specificity required to prove a claim for promissory estoppel under Florida law. The promise must be "definite, of a substantial nature, and established by clear and convincing evidence." *W.R. Grace*, 547 So. 2d at 920. A promise to perform "warehouse services" is the kind of vague, non-specific promise that is too indefinite to support a claim for promissory estoppel.[5]

Florida courts have reversed trial courts for failing to properly instruct juries in cases involving claims that require proof of specific statements. In *R.J. Reynolds Tobacco Co. v. Prentice*, 290 So. 3d 963, 966 (Fla. Dist. Ct. App. 2019), *aff'd sub nom.*, No. SC20-291, 2022 WL 805951 (Fla. Mar. 17, 2022), *reh'g denied* (May 17,

---

[5] *Prof. Underwriters Ins. Co. v. Freytes & Sons Corp., Inc.,* 565 So. 2d 900, 903 (Fla. Dist. Ct. App. 1990); *Tome v. State Farm Fire and Cas. Co.,* 125 So. 3d 864, 867 (Fla. Dist. Ct. App. 2013); *See also Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.,* 262 F. Supp. 2d 1334, 1350 (S.D. Fla. 1999) ("vague" promise was insufficient), *aff'd sub nom. Eclipse Med., Inc. v. Am. Hydro-Surgical,* 235 F.3d 1344 (11th Cir. 2000) (unpublished); *Camina Serv. Inc. v. Shell Oil Co.,* 816 F. Supp. 1533, 1540 (S.D. Fla.1992) (citing *W.R. Grace,* the court held that "application of promissory estoppel may be rejected if the terms of the promise are indefinite.")

2022), a case involving a civil conspiracy claim, the trial court "declined to give [defendant's] requested instruction and instead gave [an] instruction that did not require the jury to find that [plaintiff] relied on a specific statement." *Id.* The appellate court reversed because Florida law required the plaintiff to prove he relied to his detriment on a specific statement by defendant. *Id.*; *see also R.J. Reynolds Tobacco Co. v. Bessent-Dixon*, 313 So. 3d 173, 175 (Fla. Dist. Ct. App. 2021) (citing *Prentice* for proposition that "trial court's refusal to instruct the jury that the plaintiff must rely to his detriment on a specific statement that concealed or omitted material information about the health risks of smoking to prove a conspiracy to commit fraudulent concealment claim was error").

Here, the district court's instructions failed to properly state Florida's law on promissory estoppel. That is reversible error. *See, e.g.*, *Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1312 (11th Cir. 2005) (instruction's misstatement of law reversible error); *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 979 F.2d 823, 825 (11th Cir. 1992) (misstatements of law were prejudicial). "Because there is uncertainty as to whether the jury was actually misled, the erroneous instruction cannot be ruled harmless and a new trial is required." *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1372 (5th Cir. 1981).[6]

---

[6] That the district court used Florida's pattern instructions as the base of the starting point for the instructions in this case does not insulate the district court's error. The pattern instructions are just that—a starting point. The district court erred, not in

**B.    The verdict form should have asked the jury whether Just Play proved by clear and convincing evidence that FitzMark made specific promises.**

For similar reasons, the court erred in rejecting FitzMark's proposed verdict form. This Court applies same standard of review "to a special interrogatory verdict form [as it] appl[ies] to a district court's jury instructions." *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1072 (11th Cir. 1996). The jury verdict reflects the same errors in the court's jury instructions. First, the jury verdict does not match what Just Play pleaded in its Complaint. Rather, it broadens the Complaint and permitted the jury to find for Just Play if it concluded Just Play proved that "FitzMark promised to perform warehouse services." ECF No. 205. Second, the jury verdict did not reflect Florida law, which requires that, to recover on a theory of promissory estoppel, a plaintiff must point to a specific and definite promise.

## CONCLUSION

FitzMark respectfully requests that the court reverse the district court's denial of FitzMark's renewed motion for judgment as a matter of law and remand with instructions that the district court enter judgment for FitzMark. Alternatively,

---

starting with the pattern instructions, but in failing to adapt those instructions to the specific allegations and theories of this case, consistent with Florida's requirement that a promissory estoppel claim be based on a definite and substantial promise. *Cf. Cooper v. Federated Nat'l Ins. Co.*, 285 So. 3d 1036, 1039 (Fla. Dist. Ct. App. 2019) ("Contrary to FedNat's argument, we do not believe that the standard bad faith jury instruction sufficiently informed the jury of all the relevant law regarding bad faith.").

FitzMark respectfully requests the Court vacate the judgment and remand for further proceedings based on the trial errors below.

Dated: May 18, 2022

/s/ Andrew J. Butcher
Andrew J. Butcher
abutcher@scopelitis.com
Scopelitis, Garvin, Light, Hanson
& Feary, P.C.
30 W. Monroe St., Ste. 1600
Chicago, IL 60603

Adam C. Smedstad
asmedstad@scopelitis.com
E. Ashley Paynter
apaynter@scopelitis.com
Scopelitis, Garvin, Light, Hanson &
Feary, P.C.
3214 W McGraw St., Ste. 300
Seattle, WA 98199

Janis E. Steck
jsteck@scopelitis.com
James A. Eckhart
jeckhart@scopelitis.com
Scopelitis, Garvin, Light, Hanson &
Feary, P.C.
10 W. Market St., Ste. 1400
Indianapolis, IN 46204

Attorneys for Defendant-Appellant,
FITZMARK, INC.

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 28.1(e) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word, Office 16, in 14-point Times New Roman and contains 11,971 words.


Dated: May 18, 2022                 */s/ Andrew J. Butcher*
                                    Andrew J. Butcher

                                    Attorney for Defendant-Appellant,
                                    FITZMARK, INC.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the Court's CM/ECF system on May 18, 2022 and entered the required information on the web-based system on the Court's website.

*/s/ Andrew J. Butcher*
Andrew J. Butcher

4890-9051-4968, v. 23