No. 22-10235

_____

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

JUST PLAY, LLC,

*Plaintiff/Appellee,*

v.

FITZMARK, INC.,

*Defendant/Appellant.*

_____

On Appeal from the United States District Court
For the Southern District of Florida (Hon. Aileen M. Cannon)
No. 9:20-CV-80663-AMC

_____

## ANSWER BRIEF OF APPELLEE

Melissa Pallett-Vasquez, Esq.
mpallett@bilzin.com
Lori Lustrin, Esq.
llustrin@bilzin.com
Shalia Sakona, Esq.
ssakona@bilzin.com
Brianna Sainte, Esq.
bsainte@bilzin.com
BILZIN SUMBERG BAENA PRICE
& AXELROD LLP
1450 Brickell Ave., Suite 2300
Miami, Florida 33131
Telephone:  305-374-7593

_____
*Attorneys for Plaintiff/Appellee,*

*JUST PLAY, LLC*

**APPELLEE'S CORPORATE DISCLOSURE STATEMENT
<u>AND CERTIFICATE OF INTERESTED PERSONS</u>**

Pursuant to Rule 26.1 of the Rules of the United States Court of Appeals for the Eleventh Circuit, Appellee, Just Play, LLC ("Just Play"), a nongovernmental corporate party, states that it does not have a parent corporation, and no publicly held corporation owns 10% or more of its stock.

The undersigned certifies that the complete list of interested persons and entities was contained in prior submissions.

<u>*/s/ Shalia Sakona*</u>
Shalia Sakona, Esq.

Attorneys for Plaintiff-Appellee,
JUST PLAY, LLC.

C-1 of 1

## STATEMENT REGARDING ORAL ARGUMENT

Just Play does not oppose Appellant's request for oral argument, if the Court determines that oral argument would be beneficial.

## **<u>TABLE OF CONTENTS</u>**

<u>**Page(s)**</u>

APPELLEE'S CORPORATE DISCLOSURE STATEMENT
AND CERTIFICATE OF INTERESTED PERSONS ..........................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................ i

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF CITATIONS ......................................................................................... iv

JURISDICTIONAL STATEMENT ...........................................................................1

RESPONSE TO STATEMENT OF THE ISSUES .....................................................2

COUNTER-STATEMENT OF THE CASE .............................................................3

i.       Course of Proceedings and Disposition in the Court Below. ..........................3

ii.      Statement of the Facts. ......................................................................................6

          a.       Just Play's Search for a New Warehouse Provider ...............................7

          b.       Just Play Repeatedly Rejects FitzMark's Form ..................................11

          c.       Just Play Selects FitzMark to be its Warehouse Provider..................15

          d.       FitzMark Fails to Perform the Warehouse Services ...........................17

iii.     Statement of the Standard of Review ..............................................................21

SUMMARY OF ARGUMENT ................................................................................21

ARGUMENT ...........................................................................................................26

I.       THE TRIAL COURT CORRECTLY DENIED FITZMARK'S
         RENEWED RULE 50 MOTION ................................................................26

          A.       The District Court Properly Applied the Rule 50 Standard. ...............26

          B.       The Substantial Record of Just Play's Rejection of the May Form....28

ii

C.     The Evidence of the Parties' Course of Conduct Further Supports the Rule 50 Determination ...................................................34

D.     FitzMark's "Acceptance by Tender" Assertion Lacks Any Legal Support ...................................................................................39

II.     FITZMARK'S PROMISSORY ESTOPPEL ARGUMENTS ARE MERITLESS.................................................................................43

A.     FitzMark's Sufficiency of the Evidence Contention was Waived and is Wrong. .......................................................................43

B.     The Jury Instructions and Verdict Form on Promissory Estoppel Did Not Misstate the Law or Mislead the Jury in any Respect. .........49

CONCLUSION .....................................................................................55

CERTIFICATE OF COMPLIANCE ......................................................56

CERTIFICATE OF SERVICE ...............................................................57

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Agrosale, Inc. v. Freedom Packers, LLC*,
  No. 21-20825-CIV, 2022 WL 1642759 (S.D. Fla. Mar. 16, 2022)....................41

*Basner v. Bergdoll*,
  284 So. 3d 1122 (Fla. 1st DCA 2019) ...............................................................38

*Bernard v. IBP, Inc. of Neb.*,
  154 F.3d 259 (5th Cir. 1998) .............................................................................52

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*,
  765 F.3d 1277 (11th Cir. 2014) ..................................................................*passim*

*Camina Serv. Inc. v. Shell Oil Co.*,
  816 F. Supp. 1533 (S.D. Fla. 1992)....................................................................53

*Doe v. Celebrity Cruises, Inc.*,
  394 F.3d 891 (11th Cir. 2004) ...........................................................................45

*Dye v. Tamko Bldg. Prod., Inc.*,
  908 F.3d 675 (11th Cir. 2018) ...........................................................................42

*Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*,
  262 F. Supp. 2d 1334 (S.D. Fla. 1999)...............................................................53

*EEOC v. Exel, Inc.*,
  884 F.3d 1326 (11th Cir. 2018) ...................................................................21, 27

*Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*,
  402 F.3d 1092 (11th Cir. 2005) .........................................................................26

*Fertilizantes Tocantins S.A. v. TGO Agric. (USA), Inc.*,
  No. 8:21-CV-2884-VMC-JSS, 2022 WL 1121008 (M.D. Fla. Apr.
  14, 2022) .............................................................................................................39

*Gateway Cable T. V., Inc. v. Vikoa Const. Corp.*,
  253 So. 2d 461 (Fla. 1st DCA 1971) .................................................................32

*Great Lakes Reinsurance (UK) PLC. v. Roca*,
No. 07-23322-CIV, 2009 WL 200257 (S.D. Fla. Jan. 23, 2009) ......................52

*Kolodziej v. Mason*,
774 F.3d 736 (11th Cir. 2014) ...........................................................40

*McNely v. Ocala Star-Banner Corp.*,
99 F.3d 1068 (11th Cir. 1996) ...........................................................49

*Med-Star Cent., Inc. v. Psychiatric Hosps. of Hernando Cnty., Inc.*,
639 So. 2d 636 (Fla. 5th DCA 1994)....................................................40

*Menorah Ins. Co. v. W.F. Whelan Co.*,
110 F. App'x 524 (6th Cir. 2004)........................................................42

*Munoz v. Oceanside Resorts, Inc.*,
223 F.3d 1340 (11th Cir. 2000) ..........................................................26

*In re Natures Way Marine, LLC*,
No. CIV.A. 12-00390-KD-N, 2013 WL 5330170 (S.D. Ala. Sept.
24, 2013) .....................................................................................33

*Premix-Marbletite Mfg. Corp. v. SKW Chems., Inc.*,
145 F. Supp. 2d 1348 (S.D. Fla. 2001) ...............................................41

*Pro. Underwriters Ins. Co. v. Freytes & Sons Corp.*,
565 So. 2d 900 (Fla. 5th DCA 1990)....................................................48

*QBE Ins. Corp. v. Jorda Enters., Inc.*,
277 F.R.D. 676 (S.D. Fla. 2012).........................................................33

*R.J. Reynolds Tobacco Co. v. Prentice*,
290 So. 3d 963 (Fla. 5th DCA 2019)..............................................53, 54

*Racing Props., L.P. v. Baldwin*,
885 So. 2d 881 (Fla. 3d DCA 2004)....................................................38

*Singleton v. Dep't of Corr.*,
277 F. App'x 921 (11th Cir. 2008)......................................................27

*Smith v. Owens*,
848 F.3d 975 (11th Cir. 2017) ......................................................31, 40

*Softball Country Club-Atlanta v. Decatur Fed. Sav. & Loan Ass'n*,
   121 F.3d 649 (11th Cir. 1997) ................................................................39

*St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*,
   5 F. 4th 1235 (11th Cir. 2021) ...............................................................26

*Swerhun v. Gen. Motors Corp.*,
   812 F. Supp. 1218 (M.D. Fla. 1993) .......................................................45

*Tome v. State Farm Fire and Cas. Co.*,
   125 So. 3d 864 (Fla. 4th DCA 2013) .......................................................53

*Turner v. U-Haul Co. of Fla. 905, LLC*,
   No. 6:08-cv-118-Orl-28DAB, 2008 WL 709107 (M.D. Fla. 2008) ...................36

*U.S. Sec. Ins. Co. v. Shivbaran*,
   827 So. 2d 1090 (Fla. 3d DCA 2002) .......................................................55

*Uphoff v. Wachovia Sec., LLC*,
   No. 09-80420-CIV, 2009 WL 5031345 (S.D. Fla. Dec. 15, 2009) ...................55

*Use and Ben. of WFI Ga., Inc., v. Gray Ins. Co.*,
   701 F. Supp. 2d 1320 (N.D. Ga. 2010) ....................................................33

*Viramontes v. City of Chi.*,
   840 F.3d 423 (7th Cir. 2016) ...............................................................52

*Vision Palm Springs, LLLP v. Michael Anthony Co.*,
   272 So. 3d 441 (Fla. 3d DCA 2019) ....................................................30, 40

*Vitacost.com, Inc. v. McCants*,
   210 So. 3d 761 (Fla. 4th DCA 2017) .......................................................40

*W. Const., Inc. v. Fla. Blacktop, Inc.*,
   88 So. 3d 301 (Fla. 4th DCA 2012) .........................................................41

*W.A. Taylor & Co. v. Griswold & Bateman Warehouse Co.*,
   719 F. Supp. 697 (N.D. Ill. 1989) ..........................................................43

*W.R. Grace and Co. v. Geodata Servs., Inc.*,
   547 So. 2d 919 (Fla. 1989) ..................................................................52

*Warsowe Acquisition Corp. v. Joseph J. Blake & Assocs., Inc.*,
    No. 08-20279-CIV, 2009 WL 10668943 (S.D. Fla. May 29, 2009) ..................41

*Wylie v. Powerscreen Int'l Distrib., Ltd.*,
    No. 3:16-CV-00464 (CSH), 2018 WL 4854625 (D. Conn. Oct. 5,
    2018) ..........................................................................................................42

## Statutes

28 U.S.C. § 1291 ....................................................................................................1

## Other Authorities

Federal Rule of Civil Procedure Rule 30.................................................................34

Federal Rule of Civil Procedure 50 ...............................................................*passim*

## JURISDICTIONAL STATEMENT

Appellee, Just Play, agrees with Appellant, FitzMark, that this Court has jurisdiction under 28 U.S.C. § 1291. Just Play also agrees with FitzMark that this appeal is from a final judgment that disposes of all parties' claims following the jury's September 20, 2021 Order. Just Play further agrees that the Order on Appeal was entered on December 21, 2021, and FitzMark's Notice of Appeal was timely filed on January 19, 2022.

## RESPONSE TO STATEMENT OF THE ISSUES

The questions presented in the instant Appeal are properly framed as follows:

I.      Did the District Court properly deny FitzMark's renewed motion for judgment as a matter of law ("Renewed Rule 50 Motion"), concluding that the "trial record contains a sufficient evidentiary basis to support the jury's verdict" in favor of Just Play on its promissory estoppel claim; and

II.     Did the District Court properly adopt pattern jury instructions and a verdict form that set forth the legal elements of promissory estoppel, the clear and convincing standard, and described the subject matter of the promise as FitzMark's performance of "warehousing services" for Just Play.

## COUNTER-STATEMENT OF THE CASE

FitzMark presents a statement of the case and facts that is incomplete and misleading. The following counter-statement of the case and facts fills in the gaps left by FitzMark's omissions and corrects FitzMark's misstatements.

### i.    Course of Proceedings and Disposition in the Court Below.

Before the Court is FitzMark's appeal from the District Court's Order denying its Renewed Motion for Judgment as a Matter of Law (the "Order"). The Order affirmed a jury verdict reached after a five-day trial awarding Just Play $3,959,134 in damages on its promissory estoppel claim. ECF 248.

On March 5, 2020, Just Play filed suit against FitzMark asserting counts for breach of oral contract, promissory estoppel and unjust enrichment. ECF 1. On August 18, 2020, two months after the deadline for amending pleadings, FitzMark sought leave to file a counterclaim for declaratory judgment and assert additional affirmative defenses to allege the existence of a written contract between the parties. ECF 120 at 2 ¶ 15-16. Leave was granted. *Id.* ¶ 20.

In its counterclaim and affirmative defenses (numbers 4-6, 11, 14, and 15), FitzMark contended that an unsigned "Rate Quotation and Contract" form dated October 31, 2018 (attached to the counterclaim/affirmative defenses), constituted a "valid and enforceable contract for all purposes, including for purposes of the

allegations against FitzMark in Just Play's Complaint" by virtue of Just Play's shipment of good to FitzMark.  ECF 28 at 3 ¶ 17.

There is no evidence that that October 31, 2018 form was ever sent to or received by Just Play. FitzMark also admitted that the October 31, 2018 form attached to its counterclaim ***did not*** bind the parties. ECF 120 at 3 ¶¶ 32-33, 38-39.

On January 13, 2021, FitzMark filed a "Notice of Errata," in which it sought to replace the form relied upon in its counterclaim with a different version of the form, which was also dated October 31, 2018 but contained different rates. *Id.*; ECF 59 at 1-2. Just Play moved to strike the Notice of Errata as an improper end-run around the deadline for amending pleadings. ECF 66; ECF 120 at 4 ¶ 43. At the hearing on Just Play's Motion to Strike, FitzMark contended that a *third* version of the form, ostensibly dated sometime in April 2018, governed. ECF 120 at 5-6 ¶ 48. The district court granted Just Play's Motion to Strike, and, despite the Court's admonition that they seek leave to amend, FitzMark did not do so. *Id.* at 6 ¶ 50.

On June 3, 2021, FitzMark filed a Motion for Summary Judgment contending for the first time that a version of the form transmitted on May 2, 2018 was the operative agreement (the "May Form"). ECF 88 at 5; ECF 89 at 3 ¶ 13. FitzMark relied on the May Form at trial and in this appeal. Opening Brief at 3.

Just Play moved for summary judgment on FitzMark's counterclaim and affirmative defenses 4-6, 11, 14, and 15 because they were based on the October 31,

2018 Form that FitzMark admitted did not control the parties' relationship. ECF 92 at 2-4; ECF 120 at 3 ¶¶ 32-33, 38-39. The district court granted Just Play's Motion for Summary Judgment, dismissing with prejudice FitzMark's Counterclaim and affirmative defenses 14 and 15. ECF 141.

Trial was held between September 13-20, 2021. ECF 184, 201. On September 17, 2021, FitzMark moved for judgment as a matter of law, arguing that "the existence of an express written contract is dispositive of each of Plaintiff's claims." ECF 198 at 2. The district court denied FitzMark's motion. ECF 209 at 2-3.

On September 20, 2021 the jury reached a verdict in favor of Just Play on promissory estoppel. ECF No. 205 at 3 (Questions 5-6). The jury found that "Just Play prove[d] by clear and convincing evidence each of the following: (1) FitzMark promised to perform warehouse services for Just Play; (2) Just Play relied on FitzMark's promise to perform specific services; (3) FitzMark should have reasonably expected Just Play to rely on its promise to perform services; and (4) injustice can be avoided only if FitzMark's promise is enforced[.]" *Id.* The jury further found that Just Play proved damages in the amount of $3,959,134 "because of FitzMark's failure to perform the promised services." *Id*.

The jury further found that FitzMark failed to prove "by a preponderance of the evidence its affirmative defense that the parties agreed to be bound by a written agreement dated April 19, 2018 and sent on May 2, 2018 that precludes Just Play's

claims." *Id.* at 2 (Question 3). The District Court entered Final Judgment in favor of Just Play on September 23, 2021.[1]

On October 18, 2021, FitzMark renewed its Rule 50 Motion, arguing that "[t]he undisputed evidence established that Just Play and FitzMark entered into" the May Form, which FitzMark contended became effective when Just Play tendered goods to FitzMark on October 18, 2018. ECF 226 at 3. FitzMark argued that "[t]he existence of [the May Form] precluded Just Play from recovering under its claims for Unjust Enrichment and Promissory Estoppel." *Id*.

The district court denied FitzMark's Renewed Motion, holding that "[t]he trial record contains a sufficient evidentiary basis to support the jury's verdict, and while Defendant points to some evidence in its favor, there is ample evidence to the contrary such that no basis exists to disturb the jury's verdict." ECF 248 at 4.

On May 18, 2022, FitzMark filed its Opening Brief with this Court.

## ii.    Statement of the Facts.

Just Play is a leading manufacturer of children's toys. ECF 120 at 1 ¶ 1. Just Play sells its products to retailers, including Walmart, Kohl's, and Target, throughout North America. ECF 256 (Sept. 13, 2021 Trial Tr. – Emby exam.) 196:9-

---

[1] The District Court entered an amended Final Judgment on November 5, 2021 to include prejudgment interest. ECF 210, 237

25. Most of Just Play's products are manufactured in Asia and are shipped to California via ocean freight carriers. *Id.* 197:1-198:10.

Once products arrive at the California port, they are transported to third party warehouses. *Id.* 198:11-199:7. The products are stored at the warehouse until they are sold to Just Play's customers, at which point the warehouse provider picks the products, and packs, labels, and ships them to Just Play's customers. *Id.* 198:16-199:3. Just Play's customers have requirements for how products are to be labeled and shipped, and charge Just Play penalties (referred to as "chargebacks") when their requirements are not complied with. *Id.* 204:20-205:5, 233:13-25.

FitzMark is a warehouse provider. ECF No. 222-1 at 55. The relevant events occurred at FitzMark's Carson, California warehouse (the "Warehouse"). ECF No. 222-6 at 1; ECF No. 222-1 at 55.

### a.    Just Play's Search for a New Warehouse Provider

In 2017-2018, Just Play's business was growing and it began exploring new warehouse providers that could accommodate its and its customers' needs. ECF 256 (Sept. 13, 2021 Trial Tr. – Emby exam) 207:5-18; ECF 214-1 (Ex. P001).

Just Play required a warehouse with sophisticated electronic capabilities for processing, labeling, and tracking shipments, in addition to available "floor space," (goods stored directly on the warehouse floor, rather than in overhead racks, to reduce retrieval and processing times). ECF 214-1 (Ex. P001); ECF 214-3 (Ex.

P003);  ECF 214-35 (Ex. P0035); ECF 256 (Sept. 13, 2021 Trial Tr. – Emby exam)
212:2-213:8; ECF No. 257 (Sept. 14, 2021 Trial Tr. – Borchert exam.) 135:19-136:4
; ECF 222-1 at 33 (Carter Tr.[2] 198:8-21), ECF No. 222-1 at 62-65 (Gurrola Tr. 56:6-
63:4); ECF 214-3 (Ex. P003);   ECF 222-1 at 63-64, 77 (Gurrola Tr. 60:12-
63:04,105:11-106:22)).

In a meeting on January 2, 2018 between Just Play's then-Directors of
Operations, Michael Borchert and Dove Carter, Co-President, Charlie Emby, and
Vice President of Finance, Bill Elliott (all trial witnesses), Just Play identified the
following warehouse servicing needs:

> 1. **Packing Lists,** either automate batch printing to
> pdf.files from NAV or move this scope of work to the
> warehouse to produce from our EDI 940 file sent.
>
> **2. Bills of Lading**, replace our current excessively manual
> process of using a MS Word template to print, scan and
> email to a system generated solution.
>
> 3. Determine if the warehouse has, or can implement, a
> solution to produce packing lists and bills of lading from
> their system that will meet our requirements and rate
> objectives.
>
> **4. EDI Routing Request and Load Planning**; Explore if
> it is possible to do more Routing Requests via EDI and
> receive more Load Planning back via EDI from our top,
> high volume EDI Accounts.

---

[2] The Carter and Gurrola testimony cited herein was designated for use at trial in
ECF 155-1 and video excerpts of the same were played for the jury during trial. The
video clip reports were filed at ECF 222.

ECF 214-1 (Ex. P001); ECF 256 (Sept. 13, 2021 Trial Tr. – Emby exam) 212:2-213:8.

At this time, Mr. Gurrola was the General Manager of FitzMark's Carson warehouse. ECF 222-1 at 70-71 (Gurrola Tr. 82:10-18). Mr. Carter had previously worked with Mr. Gurrola when both were with prior employers. *Id.* at 63, 68 (Gurrola Tr. 58:22-59:9, 74:7-19). Mr. Carter, who had just started at Just Play, therefore arranged a meeting between Just Play and FitzMark to explore the possibility of Just Play hiring FitzMark. ECF No. 222-1 at 15, 17 (Gurrola Tr. 110:18-24, 127:23-128:23).

For FitzMark, winning Just Play's business was an appealing prospect. Just Play would be a "top account," offering substantial product volumes, less burdensome order processing, significantly higher rates, and increased profit margins. ECF 222-1 at 83-84 (Gurrola Tr. 134:25-136:21).

On January 24, 2018, Mr. Carter and Mr. Borchert met with Mr. Gurrola at the Warehouse. ECF 214-2 (Ex. P002); ECF 222-1 at 63 (Gurrola Tr. 56:15-57:2). As Mr. Borchert testified, during the meeting Just Play communicated its needs to FitzMark, and FitzMark represented that it could meet those needs:

> A. …I specifically told them, No, we don't want to use pallet racking, our pallets move way too fast, you should floor load it, meaning the cartons get stacked on the floor, usually about 12 feet high, so you can access the product that much quicker. . . .

9

Q. And what did Tony Gurrola say in response to your statements regarding pallet racking versus floor?

A. He said that was a great idea, he would use that.

. . . .

Q. And what was Tony telling Dove FitzMark's capabilities were?

A. He said they could do everything, he could do the EDI, he had a company called 3PL Central, which was his, what is called WMS, warehouse management system, it had the capabilities of EDI, documentation transfer, to do the bill of ladings, to do the packing slips for all the outbounds.

. . . .

Q. Q. Was there any discussion at that time of retail compliance?

A. Yes.

. . . .

Q. And what was the discussion or what were the statements made by Mr. Gurrola in January of 2018 regarding retail compliance?

A. CPL or 3PL Central had all of the routing guides from the various mass merchants available to them, so that they were well versed in the chargeback capabilities from these mass merchants.

ECF 257 (Sept. 14, 2021 Trial Tr. – Borchert exam.) 137:7-140:9.

Mr. Borchert's testimony concerning that initial meeting at the Warehouse is corroborated by FitzMark's documents. ECF 214-3 (Ex. P003). After meeting with Just Play, Mr. Gurrola sent an internal email in which he stated, "[Just Play]'s current provider can't offer the services they will need as they expand. We can do what they need through our WMS – 3PL Central (ASN, EDI, Wal-Mart VICS BOL, labeling, etc.)." *Id*.; ECF 222-1 at 63 (Gurrola Tr. 60:12-64:4).

10

In an email dated August 1, 2018, after FitzMark had won the business, Mr. Gurrola reiterated that FitzMark's "WMS [warehouse management software] (3PL Central) gives us capabilities that his current provide[r] just can't get to. EDI, UCC-128 labels, retail compliance, custom BOLs, and packing slips, et cetera." ECF 214-35 (Ex. P035); ECF 222-1 at 77 (Gurrola 1 Tr. 105:11-17).

Mr. Gurrola likewise testified that it was his "understanding that Just Play was seeking a new 3PL [*i.e.*, third-party logistics provider] provider because its current 3PL provider couldn't offer the services Just Play needed[.]" ECF 222-1 at 63-64 (Gurrola Tr. 60:12-23). He further testified that he told Mr. Carter that FitzMark could provide advanced shipping notices (ASNs), EDI services (Electronic Data Interchange), bills of lading, and labeling services for Just Play. *Id.* at 63-64 (Gurrola Tr. 60:12-63:4). Mr. Gurrola also testified that he informed Just Play that FitzMark had previous experience shipping to Just Play's primary customers (Walmart, Target, and Kohl's), and was familiar and capable of complying with the customers' policies. *Id.* at 63, 77 (Gurrola Tr. 57:24-58:8, 106:12-15); ECF 222-2 at 6-7 (Gurrola Tr. 216:1-217:1).

### b.    Just Play Repeatedly Rejects FitzMark's Form

Throughout the first half of 2018, Mr. Gurrola and Mr. Carter continued discussing services and corresponding rates. *See* ECF 222:1 at 65, 67 (Gurrola Tr. 64:14-66:21, 69:21-71:15). On April 11, 2018, Mr. Gurrola emailed Mr. Carter a

proposal entitled "Rate Quotation and Contract" dated April 10, 2018. ECF 217-36 (Ex. D036).

At trial, Just Play's Co-President, Charlie Emby, and former Director of Operations, Michael Borchert, testified concerning Just Play's corporate policy of never entering into written agreements with warehouse providers. ECF 256 (Sept. 13, 2021 Trial Tr. – Emby exam) 231:4-233:2; ECF No. 257 (Sept. 14, 2021 Trial Tr. – Borchert exam) 133:23-134:7; ECF 209 at 2; 57:7-13; 131:18-132:2]. Mr. Borchert further testified that he informed Mr. Carter, who was to succeed him as Director of Operations, of this policy, and told Mr. Carter to discuss FitzMark's proposed form with Just Play's General Counsel, Larry Geller. ECF No. 257 (Sept. 14, 2021 Trial Tr. – Borchert exam) 133:27-134:7.

Mr. Carter testified that, after discussing the April 11, 2018 form with Messrs. Geller and Borchert, he learned of Just Play's policy of not entering into written agreements with warehouse providers. ECF 222-1 at 19-20 (Carter Tr. 137:17-138:11), 40-41 (Carter Tr. 222:14-223:13). Mr. Carter testified that both Mr. Geller and Mr. Borchert told him, including specifically in connection with the May Form, that Just Play does not "sign warehouse contracts. They never had to sign warehouse contracts before, and they have no intentions of signing any kind of warehouse contract going forward." *Id.*

Armed with this knowledge, Mr. Carter testified that he told Mr. Gurrola "several times" by "both email and phone" that Just Play "***would not sign the agreement***." ECF 222-1 at 20 (Carter Tr. 139:5-14).

Just Play's ownership never approved (or authorized any person to approve) any version of FitzMark's proposed form. ECF 256 (Sept. 13, 2021 Trial Tr. – Emby exam.) 231:1-8; ECF 222-1 at 20 (Carter Tr.138:12-15). It is undisputed that Just Play never signed any version of the form. ECF 120 at 1 ¶ 6.

On April 19, 2018, Mr. Gurrola emailed Mr. Carter a different version of the proposed form, dated April 19, 2018. ECF 214-11 (Ex. P011).

On April 26, 2018, Mr. Carter, Mr. Borchert and others from the Just Play team met with Mr. Emby to present warehouse options and provide a recommendation. *See* ECF 214-16 (Ex. P017); 214-17 (Ex. P017). In an internal PowerPoint presentation comparing the potential providers, Mr. Carter highlighted "Full EDI" and "Great WMS System" as pros of engaging FitzMark. ECF 214-17 (Ex. P017).

On May 2, 2018, Mr. Gurrola emailed Mr. Carter, again attaching a new form, also dated April 19, 2018 (the "May Form"). ECF 214-19 (Ex. P019). It is this May Form that FitzMark contended at trial governed the parties' relationship. *See* Opening Brief at 30.

On May 3, 2018, Mr. Gurrola emailed Mr. Carter again, asking if he could "run with the proposal." ECF 214-22 (Ex. P022). On May 15, 2018, Mr. Gurrola checked in again to see if there was "any movement on the decision making process." *Id.* Mr. Carter responded that Just Play was not ready to engage FitzMark, and FitzMark should not wait for Just Play to fill its space. *Id.* Specifically, Mr. Carter informed Mr. Gurrola that "the owner has me working through a few details before allowing me to make a major change like this. So, on one hand, please do not wait for me to fill your space, first come first serve, and on the other hand, you are my recommendation for a new provider." *Id.*; ECF 222-1 at 71-72 (Gurrola Tr. 83:18-85:17); ECF 222-3 at 3-4 (Gurrola Tr. 313:13-316:8).

As FitzMark's corporate representative, and the only individual involved in negotiations with Just Play, Mr. Gurrola understood that Just Play would not sign the warehouse agreement, and in fact had rejected it as of May 15, 2018 when Mr. Carter told FitzMark to go ahead and "fill its space." ECF No. 222-3 at 2-4 (Gurrola Tr. 308:11-309:4, 316:3-316:8). In fact, Mr. Gurrola testified that as of May 15, 2018, he understood that "no decision by Just Pay had been made as to whether to proceed with FitzMark." *Id.* When presented with the May Form in his deposition, the relevant video excerpts of which were offered at trial, Mr. Gurrola unequivocally testified that it did not govern the relationship between FitzMark and Just Play:

Q. Mr. Gurrola, do you recognize deposition Exhibit 84 as a true and correct copy of the e-mail sent by you to Mr. Carter on May 2nd, 2018?
A. I believe so, yes.
Q. And if you turn a couple of pages further, I think three pages on, it's JP00016654, there is a rate quotation and contract with a proposal date of April 19th, 2018. Do you see that, sir?
A. Yes.
***Q. And this is not the warehouse agreement that Fitzmark contends governs the relationship between Fitzmark and Just Play, correct?***
***. . .***
***A. It is not, correct.***

ECF 222-3 at 2 (Gurrola Tr. 307:20-308:9).

### c.   Just Play Selects FitzMark to be its Warehouse Provider.

On June 25, 2018, Mr. Carter and Mr. Gurrola had a call, wherein Mr. Carter told Mr. Gurrola that Just Play had selected FitzMark as its new warehouse provider. ECF 222-1 at 42, 72-73 (Carter Tr. 229:6-22; Gurrola Tr. 87:19-89:2, 90:21-91:6); ECF 222-3 at 4-5 (Gurrola Tr. 316:9-319:19); ECF 214-31 (Ex. 31). On June 26, 2018, Mr. Carter emailed Mr. Gurrola about "our phone call last night"and provided initial shipment details. ECF 214-31 (Ex. 31).

Between June 26, 2018 and June 28, 2018, FitzMark assembled a team and beganworking on the Just Play account. *Id.*; ECF 222-1 at 75 (Gurrola Tr. 94:22-101:4. FitzMark testified that an agreement was reached by June 28, 2018. ECF 222-3 at 5 (Gurrola Tr. 319:5-15,19). FitzMark promised to provide adequate floor space for Just Play's goods, EDI and "retail compliance," and generate UCC-128 labels,

custom bills of lading, and packing slips. ECF 214-3 (Ex. P003); ECF 214-35 (Ex. P035); ECF 222-1 at 63-64, 77 (Gurrola Tr. 60:12-63:4, 105:11-17).

The first shipment of Just Play products arrived at the Warehouse on October 18, 2018. ECF 120 at 6 ¶ 70.

On October 31, 2018, Mr. Gurrola emailed Mr. Carter a credit application and a version of the form dated October 31, 2018. ECF 214-39 (Ex. P041). This form contained different rates than the May Form. *Id.*; ECF 214-19 (Ex. P019). Mr. Gurrola told Just Play, "I still need the warehouse agreement returned as well. . . . Need a signed copy back when you can, please." ECF 222-1 at 79-80 (Gurrola Tr. 121:13-122:19).

As before, Mr. Carter responded that Just Play "***do[es] not like signing agreements***." *Id*. at 81 (Gurrola Tr. 125:8-16). Just Play signed and returned the credit application. ECF 214-41 (Ex. P047). Just Play never signed the October 31 form, the May Form, or any other version, and told FitzMark that it would not sign. ECF 120 at 1 ¶ 6; ECF 222-1 at 20, 81 (Carter Tr. 138:18-139:14; Gurrola Tr. 125:8-16).

FitzMark never told Just Play that it believed the May Form to be in effect notwithstanding Just Play's express refusal to sign. *Cf.* ECF 222-1 at 38-39 (Carter Tr. 214:2-215:9) (testifying that it was a "big surprise" that "when things went bad," FitzMark refused to "own" and "make good" for its failures).

16

The rates that FitzMark ultimately invoiced and Just Play paid were not decided until January 2019, months after the first tender of goods. ECF 222-1 at 85 (Gurrola Tr. 147:10-17); ECF 214-42 (Ex. P049). It is undisputed that the operative rates are not contained in the May Form. *E.g.*, ECF 222-1 at 85 (Gurrola Tr. 147:10-17).

### d.    FitzMark Fails to Perform the Warehouse Services

Despite its repeated assurances to Just Play that it had the ability to handle the account, FitzMark was not equipped to deliver the warehouse services it promised. *See, e.g.*, ECF 222-1 at 38-39, 46-47, 49-51 (Carter Tr. 214:2-215:9, 257:8-258:7, 264:17-266:4, 281:4-282:15); ECF 256 (Sept. 13, 2021 Trial Tr. – Emby exam) 242:17-243:10, 244:23-248:14); ECF 214-80 (Ex. P099); ECF 214-19 (Ex. P019); ECF 215-20 (Ex. P130). Despite FitzMark's representations that it had the space and capabilities to process, store, label, and ship orders according to the requirements of Just Play and its customers, in summer of 2019, Just Play began to receive complaints from its customers that orders were not being properly fulfilled. ECF 256 (Sept. 13, 2021 Trial Tr. – Emby exam) 235:7-13; ECF 258 (Sept. 15, 2021 Trial Tr. – Smith exam) 127:14-128:6; ECF 222-2 at 15-16 (Gurrola Tr. 239:3-243:13).

FitzMark acknowledged the deficiencies in its performance. *See, e.g.,* ECF 214-80 (Ex. P099); ECF 215-20 (Trial P130).

17

FitzMark took financial responsibility for certain of these deficiencies. ECF 222-1 at 8-14 (Gurrola Tr. 220:4-237:2). For example, on occasions when Just Play incurred customer chargebacks, FitzMark deducted the amounts from FitzMark's invoices to Just Play. *Id.* at 8-9 (Gurrola Tr. 220:4-223:15); ECF 214-66 (Ex. P080); ECF 214-74 (P090). FitzMark also paid demurrage fees resulting from its failure to timely retrieve goods from the port. ECF 222-1 at 8-12 (Gurrola Tr. 223:17-232:24); ECF 215-3 (P105), 215-5 (Ex. P107).

In July of 2019, FitzMark admitted that it was "failing miserably to keep up" with inbound orders, and was about to "miss on most everything from [July 17, 2019] forward." ECF 214-80 (Ex. P099). FitzMark acknowledged this put Just Play in a "terrible position" with Walmart. *Id.*

Just Play was forced to send a team of its employees to the Warehouse over a period of several weeks to attempt to mitigate the damage. ECF 256 (Sept. 13, 2021 Trial Tr. – Emby exam.) 235:15-236:20, 242:23-243:6. Just Play's Co-President, Mr. Emby, and Team Lead for the Walmart account, Mark Smith, who spent weeks at the Warehouse during this period, testified extensively at trial about their experience at the FitzMark warehouse trying to physically locate products and disburse backlogged orders. *Id.*; ECF 258 (Sept. 15, 2021 Trial Tr. – Mark Smith exam) 127:12-129:23.

Just Play found the Warehouse in a "war zone"-like state of "complete and utter chaos[.]" ECF 256 (Sept. 13, 2021 Trial Tr. – Emby exam.) at 246:17-248:14. Videos of this scene were presented to the jury. ECF 257 (Sept. 14, 2021 Trial Tr. – Emby exam.) 21:9-25:17. Containers of product were dumped in the yard without identification. *Id.* at 245:11-248:14. Instead of being stored on the warehouse floor in an organized fashion, as FitzMark had promised, Just Play's products were scattered throughout the warehouse racks, with no way of identifying or locating them. *Id.* The warehouse was overcrowded with goods of other vendors that FitzMark promised would be removed to make space for Just Play. ECF 222-1 at 20, 33-34 (Carter Tr. 140:1-20, 199:8-201:22).

The pervasive problems at the warehouse damaged Just Play's business with critical retail partners and in some instances, caused Just Play to incur substantial penalties from its customers, including a $550,000 penalty from Walmart. ECF 258 (Sept. 15, 2021 Trial Tr. – Smith exam.) 130:7-132:24.

Plaintiff's damages expert, Joel Glick,[3] testified as to the following out-of-pocket costs Just Play suffered:

- Approximately $476,000 in "chargebacks," customer penalties for FitzMark's failure to comply with shipping and labeling requirements, including delinquent or incomplete shipments.

- $550,000 Walmart penalty.

---

[3] FitzMark did not present any rebuttal expert testimony concerning damages at trial.

- Offsite storage and demurrage and detention costs of $1,808,225, resulting from FitzMark's failure to timely receive and return containers at the port.

- Freight costs of $794,428, incurred by Just Play by having to ship delayed orders directly to customers, rather than having the customers pick up their products at the warehouse at the customers' cost.

- Overflow and additional storage costs of $419,442 when Just Play was forced to turn to three additional warehouse providers to hold product.

- Labor charges of $120,597 that Just Play paid to procure extra FitzMark labor.

- Employee expenses (including travel and lodging costs) of $24,770 for the time the Just Play employees spent at the Warehouse.

- Lost inventory (misplaced and never recovered product) valued at $160,231.

ECF 259 (Sept. 16, 2021 Trial Tr.) at 108:21-1:136:6.

Just Play began moving its products to other warehouse providers and terminated its relationship with FitzMark in the fall of 2019. ECF 257 (Sept. 14, 2021 Trial Tr. – Emby exam) 83:20-87:11. FitzMark contended it was still owed certain moneys and asserted a warehouse lien on Just Play's remaining products at the warehouse, essentially holding them hostage. *Id.* 85:7-15, 87:3-12, 91:8-15, 92:2-9. Just Play was forced to pay to have the products released to its customers, to avoid further damage to its business. *Id.*

### iii.    Statement of the Standard of Review

Just Play agrees with FitzMark that the standard of review of a district court's ruling on a renewed motion for judgment as matter of law is *de novo*, applying the same standards as the district court. *EEOC v. Exel, Inc.*, 884 F.3d 1326, 1329 (11th Cir. 2018). Just Play also agrees that the standard of review for jury instructions and the verdict form is "simultaneously *de novo* and deferential." *Bhogaita v. Altamonte Heights Condo. Ass'n*, *Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014).

## SUMMARY OF ARGUMENT

With this appeal, FitzMark asks this Court to usurp the jury's role as fact-finder, re-weigh five days of evidence concerning extensive negotiations and course of conduct, and disregard the jury's determination that Just Play never agreed to the May Form. As the District Court correctly concluded in denying FitzMark's Rule 50 motions, given the abundant record evidence in Just Play's favor, FitzMark's requested relief lacks any legitimate legal basis.

This Court has repeatedly held that a jury verdict may only be disturbed "when there is no material conflict in the evidence, such that no reasonable person could agree to the verdict reached." *Id.*

Fitzmark comes nowhere close to meeting this demanding standard. As the District Court explained in its Order denying FitzMark's Renewed Rule 50 Motion, "[t]he ***trial record contains a sufficient evidentiary basis to support the jury's***

21

*verdict*, and while Defendant points to some evidence in its favor, ***there is ample evidence to the contrary such that no basis exists to disturb the jury's verdict*.**" ECF 248 at 4.

With this appeal, however, FitzMark picks up right where it left off in the proceedings below. FitzMark argues that the "evidence at trial conclusively established that Just Play and FitzMark agreed to be bound by the May [Form]." Opening Brief at 30.

Just the opposite is true. The evidence presented at trial supports the jury's determination that Just Play never agreed to the May Form. Consistent with Just Play's policy of not entering into written warehouse agreements, Mr. Carter rejected the May Form. Mr. Carter testified that he informed Mr. Gurrola "several times" that Just Play would not sign FitzMark's form, and that FitzMark should fill its space "first come first serve."[4]

FitzMark also understood that the May Form did not govern the parties' relationship. FitzMark's corporate representative, Mr. Gurrola, testified that as of May 15, 2018, no agreement was reached with Just Play, and that the May Form did not govern the relationship .[5] Mr. Gurrola also confirmed that the parties first reached agreement in late June 2018 after a phone call with Mr. Carter.[6]

---

[4] ECF 214-22 (Ex. P022); ECF 222-1 at 20 (Carter Tr. 138:18-139:14).
[5] ECF No. 222-3 at 2-4 (Gurrola Tr. 307:20-308:9, 316:3-316:8).
[6] ECF 222-3 at 5 (Gurrola Tr. 318:24-319:19).

The parties' course of conduct also was at odds with FitzMark's suggestion that the May Form governed. The rates that FitzMark invoiced and Just Play paid did not match those set forth in the May Form.[7] And, in multiple instances FitzMark reimbursed Just Play for chargebacks and demurrage fees arising from FitzMark's failure to perform the services.[8]

Any of this evidence alone would be sufficient for the jury to conclude that Fitzmark failed to establish that the May Form governed. Together, however, they constitute an overwhelming record supporting the jury's conclusion.

FitzMark does not direct this Court to any authority warranting reversal on the record presented. Instead, as with each of its prior submissions below, FitzMark hangs its hat on an "acceptance by tender" theory that the jury and the District Court rejected. Here, FitzMark does not cite a single case holding that the tender of goods can bind a party to an agreement that it expressly rejected. In short, there was no mutual assent to the May Form—an essential element of contract formation.

FitzMark's "alternative" theories for setting aside the verdict are also improper. FitzMark contends that Just Play presented "insufficient evidence to support the promissory estoppel claim" because there was "no evidence presented

---

[7] ECF 222-1 at 84-85 (Gurrola Dep. Tr. 146:6-147:17).
[8] *See, e.g.*, ECF 214-59 (Ex. P070), ECF 214-63 (Ex. P075), ECF 214-66 (Ex. P080); ECF 214-73 (Ex. P089), ECF 214-74 (Ex. P090); ECF 222-2 at 8-11 (Gurrola Tr. 220:9-223:15, 227:6-230:11).

that FitzMark made any 'definite and substantial' promises to Just Play." Opening Brief at 25. As a variation on this same theme, FitzMark argues that the District Court erred when it used the term "warehousing services" in the jury instruction to describe the subject matter of the promise at issue. FitzMark contends it is too "vague" and the District Court was required to include a detailed list of every service FitzMark agreed to provide (EDI capabilities, UCC-128 carton labeling, packing lists, bills of lading, etc.). Opening Brief at 42.

FitzMark is wrong on multiple levels. FitzMark's "sufficiency of the evidence" contention cannot leave the starting gate. As the District Court held when it refused to consider the issue in connection with FitzMark's Renewed Rule 50 Motion, FitzMark waived the argument:

> Plaintiff is correct that Defendant did not raise any evidentiary challenge to Count II in its written or oral Rule 50(a) motion at trial [ECF No. 198; *see* ECF No. 234 pp. 16–20], nor does Defendant dispute this point in its Reply [ECF No. 239]. ***Defendant focused exclusively in that motion on the existence-of-a-written-contract theory, never challenging the independent evidentiary basis underlying Plaintiff's promissory estoppel claim. This failure to raise what amounts to a noticeably distinct argument is sufficient to preclude this Court from relying on that basis as a reason to disturb the jury's verdict.*** *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 893, 902–903 (11th Cir. 2004).

ECF 248 at 5.

Even if this Court were to consider FitzMark's "sufficiency of the evidence" argument, it should reject it out of hand—just as the District Court did:

> *[V]iewing all of the evidence before it, a reasonable jury could conclude that Plaintiff proved the elements of promissory estoppel by clear and convincing evidence*—specifically, that Defendant made *definite and substantial promises that it would provide satisfactory tracking, labeling and warehousing services*, and that Plaintiff justifiably relied on those promises to its detriment by making payments to Defendant, entrusting Defendant with its goods, and then incurring significant losses as a result of substantial warehouse deficiencies and delays. *Defendant has failed to present any basis to disturb the jury's verdict*.

ECF 248 at 6-7.

The District Court's summary of the substantial evidence presented at trial that led the jury to its reasonable conclusion on promissory estoppel (*see id.* at 5-6) also demonstrates why FitzMark's jury instruction argument is flawed. The precise nature of the "warehousing services" FitzMark promised was borne out by the evidence adduced during trial. Thus, the trial court properly exercised its wide discretion to describe the subject matter of the disputed promise exactly as it did—"warehousing services"—in a jury instruction and verdict form that tracked the pattern instruction and model form on promissory estoppel.

For these reasons, further explicated and below, the District Court's Order preserving the jury's verdict in favor of Just Play should be affirmed in all respects.

# ARGUMENT

## I.  THE TRIAL COURT CORRECTLY DENIED FITZMARK'S RENEWED RULE 50 MOTION

### A.    The District Court Properly Applied the Rule 50 Standard.

As the District Court held, FitzMark did not demonstrate a sufficient basis for the relief it requested in its Renewed Rule 50 Motion: overturning the jury's verdict. FitzMark's arguments on appeal are rehashes of the same unsupportable characterizations of the trial record and inapposite legal authorities it advanced before the District Court and should meet with the same fate.

Pursuant to Federal Rule of Civil Procedure 50(a)(1), judgment as a matter of law may only be granted when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue[.]"  In making this determination, all evidence and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.,* 402 F.3d 1092, 1114 (11th Cir. 2005).

As this Court has repeatedly recognized "[a] Rule 50(b) motion should only be granted where 'reasonable [jurors] could not arrive at a contrary verdict.'" *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1345 (11th Cir. 2000); *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 5 F. 4th 1235, 1242 (11th Cir. 2021) ("Rule 50 motions should be granted 'only when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his

cause of action.'"); *EEOC*, 884 F.3d at 1329 ("Judgment as a matter of law is appropriate 'only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict.'"); *Bhogaita*, 765 F.3d at 1285 (same).

The District Court properly applied this standard in its Rule 50 Orders.  *See* ECF 209 at 2  (citing *Cook*,  402 F.3d at 1114; ECF 248 at 3 (citing *Alps S., LLC v. Ohio Willow Wood Co.*, No. 08-CV-1893-T-35-MAP, 2012 WL 12914683, at *2 (M.D. Fla. Nov. 13, 2012) (characterizing Rule 50 as a "high standard").

It was FitzMark's burden to prove that Just Play agreed to the May Form. *See Singleton v. Dep't of Corr.*, 277 F. App'x 921, 923 (11th Cir. 2008) (defendant has burden of proving affirmative defense).  The jury determined that FitzMark failed to meet its burden.  *See* Question 3 of the Verdict Form [ECF 205] ("Do you find that FitzMark has proven by a preponderance of the evidence its affirmative defense that the parties agreed to be bound by a written agreement dated April 19, 2018 and sent on May 2, 2018 [the May Form] that precludes Just Play's claims?"). After five days of testimony, the jury reasonably answered "**no**."

This finding could only be disturbed by the District Court, or this Court, if it was not supported by any legally sufficient basis.  In its Order, the District Court set forth "exemplar evidence" presented at trial that supported the jury's determination:

> For example, ***Defendant's corporate representative— Anthony Mario Gurrola—specifically testified that the***

27

> *May 2, 2018 Rate Quotation and Contract was not the*
> *agreement that Defendant contends governs its*
> *relationship with Plaintiff* [ECF No. 222-3 p. 2]. . . .As
> part of another deposition that was offered at trial,
> *Plaintiff's Director of Operations—Dove Carter—stated*
> *that he had expressed to Defendant's representative*
> *"several times" that Plaintiff would not sign the May 2,*
> *2018 Rate Quotation and Contract* [ECF No. 222-1 p.
> 20]. *This was corroborated by witnesses Charlie Emby*
> *and Michael Borchert, both of whom testified that*
> *Plaintiff's policy was not to enter into written contracts*
> *for warehouse services*.

*Id.* at 4.  As the District Court concluded, this trial record contained sufficient

evidence that "permit[ted] a jury finding that Plaintiff never agreed to be bound by

[the May Form] pursuant to its corporate policy and the particular facts as they

evolved through the course of their commercial relationship."  ECF 248 at 4.

## B.    The Substantial Record of Just Play's Rejection of the May Form

The snapshot of evidence showcased by the District Court in its Order (*id.*) is

sufficient to support the jury's determination that Just Play did not agree to the May

Form (or any version of the form). However, for completeness, what follows is a

fulsome recitation of the evidence presented at trial.

As the jury learned from multiple Just Play witnesses, Just Play has a

corporate policy against entering into written agreements with warehouse providers.

ECF 256 (Sept. 13, 2021 Trial Tr. – Emby exam) 231:4-233:2; ECF No. 257 (Sept.

14, 2021 Trial Tr. – Borchert exam) 133:23-134:7; ECF 209 at 2; 57:7-13; 131:18-

132:2]. Mr. Carter testified that he was aware of this policy when he negotiated with

28

FitzMark. ECF 222-1 at 40-41 (Carter Tr. 222:14-223:6). Mr. Borchert, who trained Mr. Carter, also testified that he informed Mr. Carter of Just Play's policy. *See* ECF 257 (Sept. 14, 2021 Trial Tr. – Borchert exam.) 143:19-24.

Thus, the jury could conclude that Mr. Carter followed Just Play's policy in his negotiations with FitzMark, which required him to reject the May Form. *See* ECF 257 (Sept. 14, 2021 Trial Tr. – Borchert exam.) 143:19-24; *see also* ECF No. 256 (Sept. 13, 2021 Trial Tr. – Emby exam) 231:1-233:3).

Moreover, the evidence confirms that Mr. Carter followed Just Play's policy. Mr. Carter testified that he informed Mr. Gurrola "several times," both via telephone and email, that Just Play would not sign the form. ECF 222-1 at 20 (Carter Tr. 138:18-139:14).

> Q: ***At any point did you tell Mr. Gurrola that Just Play would not sign the agreement?***
> A: ***Yes***.
> Q: And when did you tell Mr. Gurrola that?
> A: I don't remember exact dates, ***but several times***.
> Q: And would you have communicated that to him via e-mail?
> A: ***Both e-mail and phone.***

*Id*.

FitzMark attempts to constrain this testimony to the April 11, 2018 version of the form, but neither the question that elicited this testimony, nor Mr. Carter's answer, was limited to any specific version of the form. *See id.* Indeed, Mr. Carter testified that his "recollection [wa]s that he forwarded a copy [of the May Form] to

Michael [Borchert] and [ ] had a conversation with Larry [Geller, Just Play's General Counsel]" and their feedback "was to inform me that they don't sign warehouse contracts. They never had to sign warehouse contracts before, and they have no intentions of signing any kind of warehouse contract going forward." ECF 222-1 at 40-41 (Carter Tr. 221:23-223:13).

It is undisputed that after the May Form was sent, Mr. Carter responded to Mr. Gurrola on May 15, 2018, informing him that Just Play was not ready to proceed. ECF 214-22 (Ex. P022). Mr. Carter informed Mr. Gurrola that "on one hand, ***please do not wait for me to fill your space***, ***first come first serve***, and on the other hand, you are my recommendation for a new provider." *Id*.; ECF 222-1 at 71-72 (Gurrola Tr. 83:18-85:17).

This communication operated as a rejection of the May Form. *See Vision Palm Springs, LLLP v. Michael Anthony Co.*, 272 So. 3d 441, 447 (Fla. 3d DCA 2019) (party was not bound by settlement agreement where it made clear that it intended for its insurance carrier to approve the proposed agreement before accepting it).

In late June of 2018, the parties decided to do business together. ECF 222-1 at 42, 72-73 (Carter Tr. 229:6-22; Gurrola Tr. 87:19-89:2, 90:21-91:6); ECF 222-3 at 4-5 (Gurrola Tr. 316:9-319:19); ECF 214-31 (Ex. 31). On October 18, 2018, Just Play's products began arriving at the Warehouse. ECF 120 at 6 ¶ 70. Two weeks later, Mr. Gurrola again sent Mr. Carter a form—this time a different version dated

October 31, 2018. Just Play again refused to sign. ECF 214-39 (Ex. P041). Mr. Carter stated in email "***my guys don't like signing agreements***". ECF 222-2 at Gurrola Tr. 121:13-122:19. As the jury learned, Just Play never signed any version of FitzMark's form. *See* ECF 120 at 1 ¶ 6.

But the jury did not need to take Just Play's word for it. The evidence presented confirmed that FitzMark also understood that the May Form had no effect. When asked about his May 15, 2018 email correspondence with Mr. Carter, Mr. Gurrola testified that he understood that no agreement was reached at that time and that the May Form was ***not*** the governing agreement:

> Q. Mr. Gurrola, do you recognize deposition Exhibit 84 as a true and correct copy of the e-mail sent by you to Mr. Carter on May 2nd, 2018?
> A. I believe so, yes.
> Q. And if you turn a couple of pages further, I think three pages on, it's JP00016654, there is a rate quotation and contract with a proposal date of April 19th, 2018. Do you see that, sir?
> A. Yes.
> Q. ***And this is not the warehouse agreement that Fitzmark contends governs the relationship between FitzMark and Just Play, Correct?*** . . .
> A. ***It is not, correct***.

ECF 222-3 at 2 (Gurrola Tr. 307:20-308:9); *see also id.* at 4 (Gurrola Tr. 315:15-316:8) ("as of May 15, 2018, [FitzMark] understood that no decision had been made by Just Play as to whether to proceed with FitzMark."); ECF 222-1 at 72 (Gurrola Tr. 87:2-11); *Smith v. Owens*, 848 F.3d 975, 978 n. 5 (11th Cir. 2017) ("'[T]he

recipient's rejection of an offer leaves the matter as if no offer had ever been made.'").

Mr. Carter and Mr. Gurrola also had the same understanding as to when an agreement had been reached. Mr. Gurrola testified that on June 28, 2018, Mr. Carter advised Mr. Gurrola by phone of Just Play's decision to engage FitzMark:

> Q. *And is it fair to say that it is your understanding that as of this date June 28th, 2018, Fitzmark and Just Play had reached an agreement by which Fitzmark would provide services to Just Play*?
> . . . A. *Yes*

ECF 222-3 at 5 (Gurrola Tr. 318:24-319:19) (objections omitted).

FitzMark understands the significance of the testimony of Mr. Gurrola, its corporate representative. He was the only individual from FitzMark involved in the Just Play discussions. ECF No. 222-3 at 2-4 (Gurrola Tr. 308:11-309:4). It is for this reason that FitzMark goes to such lengths to avoid Mr. Gurrola's testimony. Indeed, while it does not list it as an issue on appeal, FitzMark argues that the admission of Gurrola's testimony concerning the May Form was an improper "legal opinion" offered by a "lay witness." *See* Opening Brief at 19-20.

Here, as well, FitzMark is incorrect. Mr. Gurrola's testimony concerning the agreement is factual in nature, and is both probative and admissible. *See Gateway Cable T. V., Inc. v. Vikoa Const. Corp.*, 253 So. 2d 461, 465 (Fla. 1st DCA 1971) (whether a contract is accepted is a "jury question" as to which "extrinsic evidence

may be introduced to determine the intention of the parties."); *Use and Ben. of WFI Ga., Inc., v. Gray Ins. Co.*, 701 F. Supp. 2d 1320, 1337–38 (N.D. Ga. 2010) (denying summary judgment where party "proffered sufficient evidence from which a jury could reasonably conclude that a subcontract existed[,]" including testimony from employee that his company "entered into a contract" and "the agreement [] governs the terms of the [ ] relationship."); *In re Natures Way Marine, LLC*, No. CIV.A. 12-00390-KD-N, 2013 WL 5330170, at *1 n. 2 (S.D. Ala. Sept. 24, 2013) (denying summary judgment based on corporate representative testimony that one of two contracts submitted governed).

The District Court came to the same conclusion when it overruled FitzMark's objection to Mr. Gurrola's testimony.  *See*  ECF No. 256 (Sept. 13, 2021 Trial Tr.) 122:9-16, 129:10-19 (THE COURT: . . .What he testified to was whether he believed that to be the governing relationship[.]  . . . .It is certainly relevant evidence as to the Defendant's view of what agreement governed the parties' relationship. ).[9]

As FitzMark's corporate representative, Mr. Gurrola's testimony is imputed to the corporation, and supports the jury's conclusion that Just Play rejected the May Form. That principle is beyond dispute. *QBE Ins. Corp. v. Jorda Enters., Inc.*,

---

[9] Notably, the District Court invited FitzMark to propose a limiting instruction as to the significance to be imputed to Mr. Gurrola's testimony. FitzMark declined to do so. *See* ECF No. 256 (Sept. 13, 2021 Trial Tr.)  129:20-24.

277 F.R.D. 676, 688 (S.D. Fla. 2012) ("A Rule 30(b)(6) designee presents the corporation's position on the listed topics.").[10]

The substantial record presented regarding Just Play's rejection of the May Form—including testimony from Just Play and FitzMark witnesses—was more than sufficient to uphold the jury's determination.

### C.    The Evidence of the Parties' Course of Conduct Further Supports the Rule 50 Determination

The evidence of FitzMark's course of conduct during the relationship further confirmed that the May Form was not operative and that the parties proceeded pursuant to an oral agreement. *See* ECF 248 at 4 (Just Play "offered sufficient contrary evidence to permit a jury finding that Plaintiff never agreed to be bound by that agreement pursuant to its corporate policy ***and the particular facts as they evolved through the course of their commercial relationship***.").

FitzMark testified that an agreement was reached by June 28, 2018. ECF 222-3 at 5 (Gurrola Tr. 319:5-15). The very next day, the parties started discussing the

---

[10] The District Court authorized a second deposition of Mr. Gurrola for the very purpose of answering questions about the warehouse agreement that FitzMark alleged governed the parties' relationship, including the "negotiation, drafting, acceptance, execution, [and] rejection" thereof. *See* ECF 85; ECF No. 256 (Sept. 13, 2021 Trial Tr.) 20:3-21:6, 118:11-122:16, 123:18-25, 128:13-129:19).

shipments of specific products, setting up the EDI platform, and setting up team meetings between the companies. ECF 214-31 (Ex. 31).

The evidence presented regarding FitzMark's actions (and inactions) during its dealing with Just Play were particularly telling. The record presented at trial demonstrated that notwithstanding Just Play's clear and repeated refusals to be bound by any iteration of FitzMark's form, FitzMark continued to do business with Just Play, accepting shipment after shipment. The reason is straightforward: Just Play was a major account for FitzMark, offering substantial product volumes, high rates, and increased profit margins. ECF 222-1 at 83-84. ECF 222-1 at 83-84 (Gurrola Tr. 134:25-136:21).

It is no doubt for this reason that in the several months prior to Just Play's tender of goods, Mr. Gurrola never discussed the May Form with Just Play. Nor did FitzMark make any suggestion that it was only willing to do business pursuant to the May Form, or that it would consider the form binding after tender of goods.

 Rather, it was only two weeks *after Just Play started shipping product* that Mr. Gurrola transmitted a new version of the form (dated October 31, 2018) containing different rates. Mr. Gurrola stated that he "need[ed] a signed copy back[.]" ECF 214-39 (Ex. P041); ECF 222-1 at 79-80 (Gurrola Tr. 121:13-122:19, 125:10-16, 132:20-133:6).  Once more, Just Play did not sign the form.

Mr. Gurrola's conduct in October 2018 further supports the jury's determination. If FitzMark understood Just Play to be bound by the May Form (notwithstanding its express and repeated refusal to sign), there was no reason for FitzMark to send a new version of the form again, or state that FitzMark required Just Play's execution. *See* ECF 222-1 at 83 (Gurrola Tr. 132:20-133:6).[11] Rather, Mr. Gurrola's October overture was a "gotcha" attempt to "paper the file" knowing that Just Play had already rejected the form and FitzMark had made the determination to proceed without the form to keep the business.

FitzMark argues that there is no evidence that Just Play ever informed FitzMark of its corporate policy of not entering into written agreements with its warehouse providers (Opening Brief at 38-39). FitzMark therefore asserts that the District Court erred by considering Just Play's "uncommunicated subjective impression [regarding its policy] that were irrelevant to the question of whether Just Play and FitzMark reached an agreement." Brief at 39.

Here again, FitzMark is incorrect. Mr. Carter's October 31, 2018 email to Mr. Gurrola [ECF 214-39 (Ex. P041)] cannot be misinterpreted. It plainly communicated to Mr. Gurrola that Just Play's ownership had not given the required approval of the May Form prior to tender (nor did it thereafter). *See* ECF 222-3 at 6 (Gurrola Tr.

---

[11] In requesting that Just Play's execute the form, FitzMark effectively created a *new* condition to acceptance. *See Turner v. U-Haul Co. of Fla. 905, LLC*, No. 6:08-cv-118-Orl-28DAB, 2008 WL 709107, at * 5 (M.D. Fla. 2008).

323:24-324:4) (Gurrola knew Mr. Carter was consulting with Just Play's ownership); ECF 256 (Sept. 13, 2021 Trial Tr. – Emby exam.).

Moreover, Just Play's policy of not signing warehouse agreements had independent evidentiary significance. The fact that Mr. Carter was aware of the policy at the time he negotiated with FitzMark is relevant to whether Mr. Carter demonstrated assent to be bound by the May Form in his interactions with Mr. Gurrola. *See* ECF 257 (Sept. 14, 2021 Trial Tr. – Borchert exam.) 143:19-24 ("Q. Did you instruct, at that time, Mr. Carter to go back and tell FitzMark, we are not signing that contract? A. Dove would have done that automatically. . . . Because when I trained him, right from the beginning, he understood that we do not do written contracts."); *see also* ECF No. 256 (Sept. 13, 2021 Trial Tr. – Emby exam) 231:1-233:3.

The jury's determination is further supported by the rates that are set forth in the May Form. Those were ***not*** the rates that FitzMark invoiced or that Just Play paid for the warehousing services. *See, e.g.*, ECF 222-1 at 84-85 (Gurrola Dep. Tr. 146:6-147:17); ECF 216-4-10 (Ex. P185). Rather, the final rates were not agreed to until January 2019. ECF 214-42 (Ex. P049); ECF 222-1 at 84-84-85 (Gurrola Dep. Tr. 146:6-147:17).[12] This fact alone is sufficient for the jury to conclude that the May

---

[12] FitzMark attempts to characterize "the fact that FitzMark agreed to accommodate Just Play's request for lower [] rates" as simply a "decision not to stand on its contractual rights." FitzMark, of course, does not cite any authority for the

Form had been rejected. *See Racing Props., L.P. v. Baldwin*, 885 So. 2d 881, 883 (Fla. 3d DCA 2004) (the "alteration of one of the material terms of a contract [*i.e.*, rates] constitutes a counter-offer and rejection of said contract."); *Basner v. Bergdoll*, 284 So. 3d 1122, 1124 (Fla. 1st DCA 2019) ("'[W]here it appears that the parties are continuing to negotiate as to essential terms of an agreement, there can be no meeting of the minds.'").

Moreover, the May Form purports to prohibit modifications except through a signed writing. But the parties set the rates in January 2019, and FitzMark never asked for a signed writing "amending" the May Form to reflect new rates. ECF 214-19 (Ex. P019, May Form § 16(c)).

The evidence at trial also showed that FitzMark paid consequential damages during the relationship, including chargebacks and demurrage fees, for which the May Form purports to disclaim liability. *See, e.g.*, ECF 214-59 (Ex. P070), ECF 214-63 (Ex. P075), ECF 214-66 (Ex. P080); ECF 214-73 (Ex. P089), ECF 214-74 (Ex. P090); ECF 222-2 at 8-11 (Gurrola Tr. 220:9-223:15, 227:6-230:11); ECF 257 (Sept. 14, 2021 Trial Tr. – Borchert exam) 162:18-163:14 (testifying that FitzMark accepted responsibility for paying chargebacks without complaining or asking why

---

remarkable proposition it is asserting—that an unsigned document misstating an essential term like the rates to be paid is a binding contract.

Just Play expected it to do so). It stands to reason that FitzMark would not have paid these fees if it believed the May Form relieved it from doing so.

In short, the course of conduct evidence was wholly inconsistent with FitzMark's "acceptance by tender" theory.

### D.  FitzMark's "Acceptance by Tender" Assertion Lacks Any Legal Support

FitzMark fails to provide a single case in which a district or appellate court overturned a jury verdict on a comparable evidentiary record. There is a reason: the issue of contract formation "'is typically a question for the factfinder.'" *Fertilizantes Tocantins S.A. v. TGO Agric. (USA), Inc.*, No. 8:21-CV-2884-VMC-JSS, 2022 WL 1121008, at *8 (M.D. Fla. Apr. 14, 2022) (quoting *Strout v. Sch. Bd. of Broward Cnty.*, No. 15-61257-CIV, 2016 WL 4804075, at *8 (S.D. Fla. Feb. 1, 2016); *see also Softball Country Club-Atlanta v. Decatur Fed. Sav. & Loan Ass'n*, 121 F.3d 649, 652–53 (11th Cir. 1997) (upholding jury verdicts and noting conflicting evidence on "key issues" underlying contract formation and whether there was a meeting of the minds).

And, as this Court has repeatedly held, a jury verdict may only be disturbed "when there is no material conflict in the evidence, such that no reasonable person could agree to the verdict reached." *Bhogaita*, 765 F.3d at 1285. It is therefore unsurprising that FitzMark is unable to offer a single acceptance-by-tender (or other conduct) case appealing a jury verdict, let alone on a record as compelling as this.

Instead, FitzMark resorts to repeating the same inapposite cases that it presented in its summary judgment and Rule 50 motions that the District Court found unpersuasive. In the process, FitzMark continues to ignore blackletter law on contract formation.

In order to meet its burden to establish that the May Form governed the parties' relationship, FitzMark was required to present the jury with substantial evidence of a meeting of the minds; *i.e.*, that the parties' conduct demonstrated their mutual intent to be bound by the May Form. *Kolodziej v. Mason*, 774 F.3d 736, 743 (11th Cir. 2014) (contract formation hinges upon whether the parties' words and acts, judged by a reasonable standard, manifested an intention to agree); *Vision Palm Spring*, 272 So. 3d at 444 ("Contract formation requires a manifestation of mutual assent, the existence of which is determined by an objective test."); *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017) ("[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.'"); *Med-Star Cent., Inc. v. Psychiatric Hosps. of Hernando Cnty., Inc.*, 639 So. 2d 636, 637 (Fla. 5th DCA 1994) ("the test of the true interpretation of an offer or acceptance" is "what a reasonable person in the position of the parties would have thought it meant.").

The evidence demonstrated just the opposite—that Just Play rejected the May Form. *See Smith*, 848 F.3d at 978. And contrary to FitzMark's suggestion, a

provision in a proposed agreement that prescribes permissible methods of acceptance cannot override the need for mutual assent or trump an express refusal to be bound by a proposed form. *W. Const., Inc. v. Fla. Blacktop, Inc.*, 88 So. 3d 301, 304 (Fla. 4th DCA 2012) ("unless the offeree agrees in advance, the offeror cannot, by the offer, define the form and manner of the offeree's acceptance."); *Agrosale, Inc. v. Freedom Packers, LLC*, No. 21-20825-CIV, 2022 WL 1642759, at *4 (S.D. Fla. Mar. 16, 2022) (a party's failure to object to an invoice does not constitute acceptance of a contract where no admissible evidence shows that the party affirmatively assented to the contract's essential terms)*; Premix-Marbletite Mfg. Corp. v. SKW Chems., Inc.*, 145 F. Supp. 2d 1348, 1356 (S.D. Fla. 2001) ("Terms and conditions contained in a form continually sent by one party do not constitute performance and cannot becoming binding as a course of dealing."); *Cf. Warsowe Acquisition Corp. v. Joseph J. Blake & Assocs., Inc.*, No. 08-20279-CIV, 2009 WL 10668943, at *4 (S.D. Fla. May 29, 2009) (holding that appraiser could not unilaterally bind customer to limitations of liability terms included in the appraisal report in the absence of mutual assent).

FitzMark does not cite a single case where a court enforced an agreement against a party that had presented evidence of rejection prior to "tender" (or other conduct signifying acceptance). Instead, in the small handful of cases that FitzMark

cites, the party seeking to avoid enforcement relied solely on its failure to execute the document.

*Menorah Ins. Co. v. W.F. Whelan Co.*, 110 F. App'x 524, 527 (6th Cir. 2004), for example, did not involve evidence of rejection. Instead, the court emphasized the plaintiff's "silen[ce]" after receiving invoices containing limitations of liability. *See also Wylie v. Powerscreen Int'l Distrib., Ltd.*, No. 3:16-CV-00464 (CSH), 2018 WL 4854625, at *10 (D. Conn. Oct. 5, 2018) (form was binding in the absence of signature due to recipient's "silence" after receiving the product and failure to object to the form until the litigation).

*Dye v. Tamko Bldg. Prod., Inc.*, 908 F.3d 675 (11th Cir. 2018) is also inapposite. There, shrinkwrap packaging contained a limited warranty and warned in all-CAPS to read the terms, including a mandatory arbitration clause, "carefully" before opening the bundle of shingles. This Court held that by opening and keeping the shingles, the consumer manifested its intent to be bound by the arbitration clause. *Id.* at 683–84. The consumer was presented with a clear all-or-nothing choice: do not use the shingles, *or* open and use the shingles on the manufacturer's terms.

Here by contrast, FitzMark never indicated that it would only do business with Just Play pursuant to the May Form, or that it would consider the May Form binding without signature. Again, FitzMark did just the opposite; after Just Play rejected the May Form, FitzMark continued to negotiate the terms of engagement. ECF 222-1

42

at 84-85 (Gurrola Dep. Tr. 146:6-147:17).

FitzMark's citation to *W.A. Taylor & Co. v. Griswold & Bateman Warehouse Co.*, 719 F. Supp. 697, 702 (N.D. Ill. 1989) is also unhelpful. There, the customer's legal department negotiated changes to the warehouse's form before tendering goods, but left the limitation of liability provisions intact. *Id*. Not so here. Just Play never negotiated FitzMark's form. Rather, Just Play expressly rejected the form.

Thus, contrary to FitzMark's suggestion, neither the verdict nor the District Court's Order is at odds with case law addressing acceptance by tender. The Order simply recognizes that mutual assent is an essential element of contract formation, even when the offeree attempts to specify the means of acceptance.

Accordingly, the District Court correctly applied the Rule 50 standard and concluded that the jury's verdict was well founded. This Court should affirm the District Court's determination for the same reason.

## II. FITZMARK'S PROMISSORY ESTOPPEL ARGUMENTS ARE MERITLESS

### A. FitzMark's Sufficiency of the Evidence Contention was Waived and is Wrong.

Although FitzMark does not identify it as an issue on appeal, FitzMark improperly (and inaccurately) argues that there was insufficient evidence presented to the jury of a "definite and substantial promise" made by FitzMark to Just Play necessary to sustain the promissory estoppel verdict. Brief at 15, 40.

FitzMark failed to preserve its "sufficiency of the evidence" argument. As the District Court noted, FitzMark's original Motion for Judgment as a Matter of Law was premised entirely on FitzMark's theory that the May Form was an enforceable contract and prevented Just Play from prevailing on any count.

The District Court rejected that suggestion (correctly observing Just Play was entitled to plead in the alternative) and denied FitzMark's original Rule 50 motion. As the District Court noted, FitzMark "***did not otherwise challenge the evidentiary basis of Plaintiff's alternative theories of promissory estoppel***." ECF 248 at 2. FitzMark admits as much here. Opening Brief at 41 ("FitzMark's original Rule 50 motion did not explicitly address the individual elements of Just Play's promissory estoppel [] [*sic*] claim.").

As the District Court further observed, it was not until FitzMark filed its Renewed Rule 50 Motion that FitzMark "briefly addressed the promissory estoppel claim directly, arguing that the trial evidence does not establish a definite promise by Defendant to Plaintiff or any reliance on such a promise by Plaintiff." ECF 248 at 2-3. The District Court thus concluded that FitzMark waived its new and distinct sufficiency of the evidence contention:

> As a threshold matter, Plaintiff is correct that Defendant did not raise any evidentiary challenge to Count II in its written or oral Rule 50(a) motion at trial [ECF No. 198; *see* ECF No. 234 pp. 16–20], nor does Defendant dispute this point in its Reply [ECF No. 239]. ***Defendant focused exclusively in that motion on the existence-of-a-written-***

> ***contract theory, never challenging the independent
> evidentiary basis underlying Plaintiff's promissory
> estoppel claim. This failure to raise what amounts to a
> noticeably distinct argument is sufficient to preclude this
> Court from relying on that basis as a reason to disturb
> the jury's verdict.***

ECF 248 at 5.

It is no doubt because of the District Court's waiver determination that FitzMark does not identify its purported "insufficiency of the evidence" contention as an issue on appeal. Instead, FitzMark attempts to backdoor or bootstrap its waived argument into its appeal as an "alternative" to its May Form argument. This, too, is inappropriate. *See Doe*, 394 F.3d at 893, 902–903 ("This Court repeatedly has made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury.").

However, even if FitzMark had preserved its "substantial and definite" promise argument, it is meritless. Whether FitzMark's promise to Just Play was sufficient to sustain a promissory estoppel claim was an issue of fact for the jury. *Swerhun v. Gen. Motors Corp.*, 812 F. Supp. 1218, 1222 (M.D. Fla. 1993) (whether promise is of a "definite" and "substantial nature" is an issue for the finder of fact).

And, as the District Court held there was substantial clear and convincing record evidence to support the jury's verdict on promissory estoppel:

> *Defendant made definite and substantial promises that it would provide satisfactory tracking, labeling and warehousing services, and that Plaintiff justifiably relied on those promises to its detriment by making payments to Defendant, entrusting Defendant with its goods*.

ECF 248 at 6.

As support for this holding, the District Court highlighted the extensive record evidence presented to the jury regarding the specific warehousing services FitzMark promised to provide, including:

1) Mr. Gurrola's testimony confirming that he represented to Just Play that FitzMark could provide electronic data interchange services, bills of lading, advance ship notices, and labeling services (ECF 222-1 at 64);

2) Emails in which Just Play provided FitzMark with photos demonstrating how its items should be stored on the floor, and in which FitzMark assured Just Play that FitzMark had sufficient personnel and would "shift[ ] as the business warrants." (ECF 214-7);

3) Emails exchanging EDI file examples to assess compatibility with FitzMark's existing programming, in which FitzMark represented that "Walmart packing slips and BOL's are already developed as well as their UCC128 labels so that will be no issue at all[,]" and indicated that FitzMark would "ensure" that Just Play's customers received "the highest level of service from [Just Play's] new provider." (ECF 214-29; ECF 214-30);

46

4)  Emails in which FitzMark represented that it was "well aware of ways to combat chargeback risk" through proper label placement, quality control checks, and utilization of retailer-specific templates (ECF 214-47);

5)  Emails in which FitzMark represented that it was "very familiar" with Target's processes and would review Target's routing guide to ensure that it matched up with FitzMark's processes (ECF 214-57);

6) A Just Play internal PowerPoint presentation indicating that FitzMark was selected, in part, because of its technological capabilities (ECF 214-17);

7)  Emails concerning shipment problems caused by FitzMark's deficient performance (ECF 215-20); and

8) Testimony from Just Play's expert, Joel Glick, concerning the amount of freight charges incurred by Just Play as a result of Defendant's shipping issues. ECF 234-2 at 3–4.

Moreover, Mr. Borchert testified that during Just Play's initial meeting with FitzMark, Just Play specifically described its needs and expectations with respect to the services to be provided, and that FitzMark represented that it was able to comply with Just Play's requirements—it could "do everything." ECF No. 257 (Sept. 14, 2021 Trial Tr. – Borchert exam.) 137:4-140:16.

The definite and substantial nature of the promise to Just Play was further corroborated by Mr. Gurrola's testimony and the emails concerning the initial

47

meeting. The evidence demonstrated that Mr. Gurrola had the same understanding as to the warehouse services FitzMark promised it would (and could) perform. ECF No. 222-1 at 62-65 (Gurrola Tr. 56:6-63:4) (testifying that Gurrola told Carter that FitzMark could provide advance shipping notices, EDI services, VICS bills of lading, and UCC-128 labeling services); ECF 214-3 (Ex. P003).

This extensive evidence proffered by Just Play on the "promise" is a far cry from that found insufficient to support a claim for promissory estoppel in *Pro. Underwriters Ins. Co. v. Freytes & Sons Corp.*, 565 So. 2d 900 (Fla. 5th DCA 1990). There, policyholder argued that the insurer should not be permitted rely on an alcohol exclusion to deny coverage for injury arising out of an alcohol sale. The policyholder argued that the agent represented that the policy was "what [the policyholder] needed." *Id*. at 901. The court determined there was no substantial and definite promise to provide liquor liability coverage where the policyholder never asked about liquor liability coverage and suggested that it was not needed. *Id.*

Here, by contrast, Just Play and FitzMark's pre-engagement communications included clear discussions regarding Just Play's requirements with respect to EDI, packing, labeling, bills of lading, and floor space. And as to each such category of services, FitzMark represented that it was equipped to meet Just Play's needs. ECF No. 257 (Sept. 14, 2021 Trial Tr. – Borchert exam.) 137:4-140:16; ECF No. 222-1 at 62-65 (Gurrola Tr. 56:6-63:4); ECF 214-3 (Ex. P003).

48

For all these reasons, FitzMark's "alternative" assertion that there was insufficient evidence to support the jury's promissory estoppel verdict is meritless.

### B.    The Jury Instructions and Verdict Form on Promissory Estoppel Did Not Misstate the Law or Mislead the Jury in any Respect.

FitzMark's challenge to the promissory estoppel jury instruction and verdict form is also improper. Jury instructions are reviewed "*de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party[;]" however, the district court is given "'wide discretion as to the style and wording employed.'" *Bhogaita*, 765 F.3d at 1285 (quoting *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab.*, 739 F.3d 579, 585 (11th Cir. 2012)).[13] Reversal is only appropriate where the appellate court is "left with a ***substantial and ineradicable doubt*** as to whether the district court properly guided the jury." *Id.*

Here, there can be no doubt that the District Court properly guided the jury on promissory estoppel. FitzMark does not suggest that the jury instruction misstated the law or that FitzMark was prejudiced. FitzMark also does not dispute that the jury received the proper instruction on the elements of promissory estoppel, or the "clear and convincing" evidence standard. Nor can it. The jury instructions and verdict form tracked the standard Florida pattern forms. *See* Fla. Standard Jury Instruction 416.46; Fla. Model Verdict Form 441.46; ECF No. 202, final jury

---

[13] The same "deferential standard of review" applies to a verdict form. *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1072 (11th Cir. 1996).

instructions at 10 (describing "clear and convincing" evidentiary burden), 18 (describing promissory estoppel elements); ECF 205 at 3.

Instead, the sole basis FitzMark's asserts for the District Court's supposed error is the Court's chosen description of the promise—"warehousing services." According to FitzMark, the term was too "vague", "non-specific" and "too indefinite to support a claim for promissory estoppel under Florida law."[14] Indeed, Fitzmark posits that the use of "warehousing services" improperly "expanded" Just Play's promissory estoppel theory beyond the bounds of the Complaint (*see* Brief at 45).

Not true. The District Court properly exercised its wide discretion to characterize the "subject matter" of the promise as "warehousing services." The term accurately distilled Just Play's promissory estoppel theory to its essence, as the pattern instructions require. *See* Fla. Standard Jury Instruction 416.46; Fla. Model Verdict Form 441.46; ECF No. 202 at 18.

FitzMark's contention that the individual warehousing services that were the subject of the promise were required to be spelled out in granular detail is also incorrect. As the District Court noted in its Order, the nature of the "warehousing services" was borne out by the evidence adduced during the five-day trial:

> Thus, ***viewing all of the evidence before it***, *a reasonable jury could conclude that Plaintiff proved the elements of*

---

[14] The standard instruction and verdict form provide a blank space for the court to "[describe the subject matter of the alleged promise]." Fla. Standard Jury Instruction 416.46; Fla. Model Verdict Form 441.46.

*promissory estoppel by clear and convincing evidence*—specifically, *that Defendant made definite and substantial promises that it would provide satisfactory tracking, labeling and warehousing services*, and that Plaintiff justifiably relied on those promises to its detriment by making payments to Defendant, entrusting Defendant with its goods, and then incurring significant losses as a result of substantial warehouse deficiencies and delays. Defendant has failed to present any basis to disturb the jury's verdict.

ECF 248 at 6-7.

Moreover, during the charging conference, the District Court asked FitzMark to provide authority that required the laundry list-type instruction it requested:

THE COURT: *But what promissory estoppel [instruction] have you seen that is that granular in going kind of item by item*, other than just more generally describing the promise?

FitzMark's counsel could not do so and responded, "*Well, I have not—I have not seen one.*" The District Court thus determined to stay "*most faithful to the promissory estoppel elements and the standard instructions on promissory estoppel that I have seen, and I have never, at least to date, seen a promissory estoppel instruction that is this granular*." ECF 258 (Sept. 15, 2021 Trial Tr. – Charge conference) 187:10-189:17.

Here again, FitzMark offers no authority for the tortured assertion it is advancing—that the trial court committed reversible error by not including the

minutiae of individual warehousing services (*i.e.*, EDI capabilities, UCC-128 carton labeling, packing lists, bills of lading, etc.) in the jury instruction and verdict form.

Taking FitzMark's argument to its logical conclusion, every jury instruction or verdict form would require a copy-and-paste of the complaint's individual allegations. This level of detail is not what is required, and in fact, likely would be counterproductive to the jury's understanding of its charge. *Viramontes v. City of Chi.*, 840 F.3d 423, 428 (7th Cir. 2016) (evaluation of jury instructions should be "focused on facts and not on the formalistic language in the original complaint."); *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 265 (5th Cir. 1998) (sufficiency of jury instructions is evaluated holistically, including with reference to the evidence presented and the arguments of counsel).

None of the promissory estoppel cases FitzMark cites concern jury instructions or verdict forms at all. Rather, these cases simply held that the plaintiffs failed to present sufficient evidence or allegations to establish a definite and substantial promise. *See W.R. Grace and Co. v. Geodata Servs., Inc*., 547 So. 2d 919, 920 (Fla. 1989) (holding that defendant's representations that it thought it would require additional services from plaintiff for some unknown period beyond the scope of the parties' written agreement was not sufficiently definite to establish a claim for promissory estoppel); *Great Lakes Reinsurance (UK) PLC. v. Roca*, No. 07-23322-CIV, 2009 WL 200257, at *6 (S.D. Fla. Jan. 23, 2009) (granting summary

judgment as to promissory estoppel claim because plaintiffs failed to respond to motion or produce any evidence describing the nature and substance of the alleged promise); *Tome v. State Farm Fire and Cas. Co*., 125 So. 3d 864, 867 (Fla. 4th DCA 2013) (holding that plaintiff could not use promissory estoppel to extend policy beyond its stated expiration date based on an earlier driver exclusion form); *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc*., 262 F. Supp. 2d 1334, 1350 (S.D. Fla. 1999) (holding that defendant's statements that it intended to have a "long lasting partnership" and that plaintiff could "continue" to act as its supplier were "too indefinite to contradict the unambiguous language" in their written contract); *Camina Serv. Inc. v. Shell Oil Co.*, 816 F. Supp. 1533, 1540 (S.D. Fla. 1992) (holding that franchisee failed to adequately allege a claim for promissory estoppel based on franchisor's failure to advise that franchise would be terminated based on criminal conviction).

FitzMark's attempt to draw support from *R.J. Reynolds Tobacco Co. v. Prentice*, 290 So. 3d 963, 965 (Fla. 5th DCA 2019) is even more misplaced. *Prentice* is not a promissory estoppel case. Rather, in *Prentice*, the plaintiff brought a fraudulent concealment conspiracy claim against a tobacco company for smoking injuries. The trial court refused to instruct the jury that the plaintiff had to prove detrimental reliance on an affirmative false or misleading statement made by the defendant. Instead, the court instructed that concealment or withholding of health or

addiction-related information was sufficient to find the existence of a conspiracy to commit fraudulent concealment. *Id.* The appellate court found error because the jury instructions failed to "inform[ ] the jury of the need to find that [decedent] detrimentally relied on a false or misleading statement by [tobacco company]." *Id.* at 966.

Neither the claim of error nor the appellate decision in *Prentice* were predicated on a need for the jury instruction to define the false or misleading statements allegedly made by the defendant with more specificity. Rather, the appellate decision was grounded on correcting the trial court's misstatement of the law—the legal distinction between affirmative misstatements and omissions.

The jury instructions and verdict form here contain no such misstatement of the law on promissory estoppel. Therefore there is no basis for "'substantial and ineradicable doubt as to whether' the district court properly guided the jury.'" *See Bhogaita*, 765 F.3d at 1285 (quoting *Silver Star*, 739 F.3d at 585).

FitzMark may not like the conclusion that the jury reached. But, FitzMark cannot claim that the jury arrived at its determination as a result of improper instructions from the District Court. The jury reached its verdict by correctly applying the law to the extensive record evidence of (i) the parties' mutual understanding regarding Just Play's warehousing service needs; (ii) FitzMark's promise to fulfill those services; (iii) Just Play's reliance on that promise, (iv)

FitzMark's abject failure to fulfil its promise that cost Just Play millions of dollars in damages.[15] Indeed, this case is precisely the scenario that promissory estoppel is meant to address.[16]

## CONCLUSION

The trial court properly denied FitzMark's Renewed Rule 50 Motion and upheld the jury's sound determination. Just Play therefore respectfully requests that the District Court's Order be affirmed in all respects.

---

[15] ECF 214-51 (Ex. P059); ECF 214-80 (Ex. P099); ECF 222-2 at 1-2 (Gurrola Tr. 194:17-199:15; ECF 259 (Sept. 16, 2021 Trial Tr. – Glick exam.) 102:11-134:17, 148:17-149:2.

[16] *See Uphoff v. Wachovia Sec., LLC*, No. 09-80420-CIV, 2009 WL 5031345, at *4 (S.D. Fla. Dec. 15, 2009) ("The essence of promissory estoppel is detrimental reliance."); *U.S. Sec. Ins. Co. v. Shivbaran*, 827 So. 2d 1090, 1092 (Fla. 3d DCA 2002) (promissory estoppel serves to prevent injustice where the "promisor reasonably should have expected that his affirmative representations would induce the promisee into action or forbearance, and where the promisee shows that such reliance was to his detriment.")

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE
& AXELROD LLP**
*Counsel to Plaintiff/Appellee,
Just Play, LLC*

1450 Brickell Ave., Suite 2300
Miami, Florida 33131
Telephone:  305-374-7593


By:   */s/ Shalia Sakona, Esq.*
      **Shalia Sakona, Esq.**
      Florida Bar No.: 107398
      **Melissa Pallett-Vasquez, Esq.**
      Florida Bar No.: 715816
      **Lori Lustrin, Esq.**
      Florida Bar No.: 59228
      **Brianna Sainte, Esq.**
      Florida Bar No.: 1018951
      mpallett@bilzin.com
      llustrin@bilzin.com
      ssakona@bilzin.com
      bsainte@bilzin.com
      eservice@bilzin.com


## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 28.1(e) because this

document has been prepared in a proportionally spaced typeface using Microsoft

Office Word, Office 16, in 14-point Times New Roman and contains 12,828 words.

*/s/ Shalia Sakona, Esq.*

56

Case No. 22-10235
Just Play, LLC v. FitzMark, Inc.

Shalia Sakona, Esq.
*Counsel to Plaintiff/Appellee,*
*Just Play, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2022, a true and correct copy of the foregoing was served via electronic filing pursuant to the Eleventh Circuit ECF Procedures, which will send a notice of electronic filing to all counsel of record.

*/s/ Shalia Sakona, Esq.*